The STATE of Ohio, Appellee,

v.

PHILLIPS, Appellant.

[Cite as *State v. Phillips*, 155 Ohio App.3d 149, 2003-Ohio-5742.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 19878.

Decided Oct. 24, 2003.

152

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and R. Lynn Nothstine, Assistant Prosecuting Attorney, for appellee.

Jon Paul Rion, for appellant.

---

GRADY, Judge.

{¶ 1} Defendant, James Phillips, entered a plea of no contest to possessing crack cocaine in violation of R.C. 2925.11(A), after the trial court had overruled his motion to suppress evidence. Defendant was convicted and sentenced to four years' imprisonment and a $10,000 fine. Defendant timely appealed to this court, challenging the trial court's order overruling his motion to suppress evidence.

{¶ 2} The trial court assumes the role of the trier of facts when deciding a motion to suppress and is in the best position to resolve conflicts in the evidence and determine the credibility of the witnesses and the weight to be given to their testimony. *State v. Retherford* (1994), 93 Ohio App.3d 586, 639 N.E.2d 498. Upon appellate review of a decision on a motion to suppress, the court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. Id. The appellate court must then independently determine, as a matter of law, without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied. Id.

{¶ 3} The facts as found by the trial court in this case are as follows:

{¶ 4} "On September 11, 2002 at approximately 12:15 p.m., Dayton Police Officers Joseph Oldham and Matthew Locke were patrolling in a marked police cruiser traveling north on Kumler Avenue, which is a high crime area. The officers, as they were approaching Lexington Avenue, observed a 1994 Yukon

automobile traveling south on Kumler Avenue with no visible front license plate. The Yukon, as it turned out, was driven by the Defendant, Mr. Phillips.

{¶ 5} "The Officers decided to stop the Yukon for a violation of O.R.C. § 4503.21, which requires, except in certain situations not applicable here, that an operator of a motor vehicle display in plain view both rear and front license plates. The officers made a U-turn in order to make the stop. Mr. Phillips, in the meantime, had turned onto Grand Avenue, parked the vehicle at the right curb, exited the vehicle, and, before the officers were able to stop him, crossed the street and entered a yard in the 1600 block of Grand Avenue. The officers stopped the cruiser on Grand Avenue and Officer Oldham, after exiting the vehicle, yelled to Mr. Phillips that he needed to talk to him. Mr. Phillips stopped and turned to wait for Officer Oldham.

{¶ 6} "Officer Oldham, after he reached Mr. Phillips, requested to see Mr. Phillips's Driver's license. Mr. Phillips retrieved his wallet and gave Officer Oldham his driver's license. Officer Oldham also informed Mr. Phillips of the reason for the contact, and Mr. Phillips stated that the front license plate was in the vehicle's front window.

{¶ 7} "This is a good point to diverge from the chronology of events to discuss the front license plate. The Yukon, following Mr. Phillips's arrest, was, of course, towed. The Yukon's owner is Willie Carpenter not Mr. Phillips. Mr. Carpenter testified that when he retrieved the Yukon from Coffey's tow yard, the front license plate was on the vehicle's dashboard. Mr. Carpenter further testified that he secured the license plate to the vehicle's front window. The Court, from this testimony, made the factual conclusion that when the officers observed the Yukon traveling south on Kumler Avenue that the Yukon's front license plate was not attached to the front window, and, accordingly, was not in plain view in violation of O.R.C. § 4503.21. *State v. Brown* (Jan. 9, 1991), Clark App. No. 2817.

{¶ 8} "Mr. Phillips, returning to the chronology, was wearing thin, nylon jogging pants which had several pockets. Officer Oldham noticed that Mr. Phillips's pants pockets contained items which made the pockets bulge. Officer Oldham asked Mr. Phillips what he had in his pockets, and Mr. Phillips responded by indicating he had 'nothing' in his pockets. Officer Oldham also asked Mr. Phillips if he had any weapons, and Mr. Phillips said he did not have any weapons. Officer Oldham then asked Mr. Phillips if he could perform a pat down search for weapons, and Mr. Phillips forcefully denied this request. Officer Oldham testified that he was going to perform a pat down search irrespective of Mr. Phillips' response to the pat-down request.

{¶ 9} "Officer Oldham then informed Mr. Phillips that he was going to be issued a citation for the front license plate violation and that the officers, before

issuing the citation, were going to perform a weapons pat-down search. Mr. Phillips, as Officer Oldham stepped forward to conduct the pat down search, stepped away and turned, leading Officer Oldham to conclude that Mr. Phillips was attempting to run away. Mr. Phillips was secured with handcuffs, and Officer Oldham conducted a pat-down search for weapons.

{¶ 10} "Officer Oldham conducted the pat-down search by patting down Mr. Phillips with his open palms. Officer Oldham, as he was patting down Mr. Phillips's right thigh pocket, felt, in the bottom of the pocket, two golf-ball sized, jagged objects. Officer Oldham, during direct examination, testified that upon feeling the two objects he, based upon his experience as a police officer, 'immediately believed' the two objects were 'suspected crack cocaine.' Officer Oldham further testified that upon feeling the two golf-ball sized, jagged objects, he concluded that the objects were crack cocaine. Officer Oldham, during redirect examination, also testified that at the time he initially felt the two objects, he believed the objects to be crack cocaine. Officer Oldham, based upon what he felt during the pat down search, retrieved the objects from Mr. Phillips's pants. The objects were, upon testing, crack cocaine." (Decision, Entry and Order, at 1–4.)

{¶ 11} The trial court overruled defendant's motion to suppress, concluding that because the vehicle's front license plate was not in plain view, the officers had probable cause of a violation of R.C. 4503.21 that justified their initial stop of defendant. Further, based upon the totality of the circumstances, the officers had a reasonable suspicion that defendant might be armed and dangerous, justifying the pat-down frisk of defendant for weapons. And pursuant to the "plain feel" doctrine, the officer who removed the crack cocaine from defendant's pants pocket was justified in doing so because he felt and immediately recognized the article as crack cocaine while patting defendant down for weapons.

{¶ 12} Defendant presents three issues for our review.

## FIRST ASSIGNMENT OF ERROR

{¶ 13} "The trial court erred in sustaining [sic] the motion to suppress because the state failed to show that the front license plate was not in 'plain view.'"

{¶ 14} Defendant does not dispute that the officers were probably unable to see the front license plate on the dashboard of the vehicle he was driving as it traveled down the street. Defendant argues, however, that because Officer Oldham saw the front license plate on the vehicle's dashboard when he approached it after the stop, the officer had no legitimate basis to continue defendant's detention, thus, requiring suppression of the crack cocaine that was later discovered on defendant's person.

{¶ 15} *Dayton v. Erickson* (1996), 76 Ohio St.3d 3, 665 N.E.2d 1091, confirmed that an observed violation of the motor vehicle code is a sufficient justification to stop and detain a motorist, such that no independent reasonable and articulable suspicion of other criminal activity is required under the rule of *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, in order to withstand a motion to suppress evidence of contraband that is legitimately seized as a consequence of the stop. See, also, *Whren v. United States* (1996), 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89.

{¶ 16} R.C. 4503.21 requires operators of motor vehicles to "display in plain view on the front and rear of the motor vehicle the distinctive number and registration mark * * * furnished by the director of public safety." R.C. 4503.22 provides that the distinctive number shall appear on a "license plate." Together, these provisions require the license plates issued for a vehicle to be displayed on the front and rear of the vehicle, and in both instances, "in plain view."

{¶ 17} Defendant argues that the license plate's lying on the dashboard of the vehicle he drove satisfied the statutory requirements with respect to display of its front-side license plate because the license plate was "in plain view" to a person who, looking through the windshield, could see it. He relates this contention to the rule of *State v. Chatton* (1984), 11 Ohio St.3d 59, 11 OBR 250, 463 N.E.2d 1237, which held that a temporary tag lying on a vehicle's rear deck and visible through its rear window did not violate a display requirement because the relevant statute did not state how temporary tags must be displayed. *Chatton* is significant because, as here, the issue was raised in the context of a motion to suppress evidence seized as a result of the stop.

{¶ 18} We are not concerned here with a temporary tag. However, we note that, subsequent to *Chatton*, R.C. 4503.21 was amended to require operators of vehicles for which a temporary tag has been issued to "display the temporary license placard in plain view from the rear of the vehicle either in the rear window or on an external rear surface of the motor vehicle." That would appear to exclude the circumstance in *Chatton*, because a tag lying on the rear deck at the rear window is ordinarily not positioned "in the rear window" of a motor vehicle such that it is visible "from the rear of the vehicle." Some closer inspection is required.

{¶ 19} The facts here are even a further step away. A license plate may be "in plain view" for purposes of R.C. 4503.21 to a person who sees it positioned on the dashboard of a vehicle, but so long as it is inside the vehicle, the plate is not displayed "on the front" of the vehicle. To satisfy that requirement, the plate must be mounted to the vehicle's exterior, on its front side, and in plain view. Because the plate located on the dashboard of the vehicle defendant drove failed those requirements, the officers had probable cause to stop him in order to cite

him for a violation of R.C. 4503.21. The stop was therefore reasonable for purposes of the Fourth Amendment under the rule of *Dayton v. Erickson,* 76 Ohio St.3d 3, 665 N.E.2d 1091. Further, the officers were authorized to detain defendant until they had completed the process of citing him for the R.C. 4503.21 violation.

{¶ 20} The first assignment of error is overruled.

## SECOND ASSIGNMENT OF ERROR

{¶ 21} "The trial court erred in failing to sustain the suppression motion because the state's witness failed to articulate a reasonable basis for patting down appellant's clothing."

{¶ 22} Authority to conduct a pat-down search does not flow automatically from a lawful stop; a separate inquiry is required. *Terry,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. The point of that inquiry is whether the officer was "justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer and others." Id. at 24, 88 S.Ct. 1868, 20 L.Ed.2d 889. If that justification exists, the officer may reasonably conduct a pat-down search for weapons. "And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." Id. at 27, 88 S.Ct. 1868, 20 L.Ed.2d 889.

{¶ 23} Intertwined with the reasonableness requirement is the other requirement of *Terry* that the officer's suspicion must be "articulable." That connotes more than a mere subjective pronouncement. It requires demonstrable facts that, together with any rational inferences that may be drawn from them, reasonably support a conclusion that the suspect is armed and dangerous. The conclusion is necessary to the independent judicial review that a Fourth Amendment challenge to a pat-down search involves. In that connection, *Terry* states:

{¶ 24} "Nothing we say today is to be taken as indicating approval of police conduct outside the legitimate investigative sphere. Under our decision, courts still retain their traditional responsibility to guard against police conduct which is overbearing or harassing, or which trenches upon personal security without the objective evidentiary justification which the Constitution requires. When such conduct is identified, it must be condemned by the judiciary and its fruits must be excluded from evidence in criminal trials." Id. at 15, 88 S.Ct. 1868, 20 L.Ed.2d 889.

{¶ 25} There is a significant difference between the facts here and those in the majority of stop-and-frisk situations. When individuals are suspected of crimes like drug trafficking, for which they are likely to be armed, the right to frisk is "virtually automatic." *State v. Evans* (1993), 67 Ohio St.3d 405, 413, 618 N.E.2d 162. In *Terry*, the conduct of the defendant and his companion "were consistent with [Officer] McFadden's hypothesis that these men were contemplating a daylight robbery—which, it is reasonable to assume, would be likely to involve the use of weapons." Id. at 28, 88 S.Ct. 1868, 20 L.Ed.2d 889. Here, those underlying circumstances are wholly lacking.

{¶ 26} Defendant Phillips was stopped for a violation of the motor vehicle code: failure to display a license on the vehicle he was driving. The facts that the officers observed fully justified the stop, per *Dayton v. Erickson*, but nothing those facts involved in any way suggest a potential for violence or that Phillips might be armed. Further, unlike *State v. Andrews* (1991), 57 Ohio St.3d 86, 565 N.E.2d 1271, wherein the suspect who was stopped in a secluded location during night-time hours appeared to be concealing something behind his back, Phillips was stopped shortly after noon as he walked in the direction of a house in a residential neighborhood.

{¶ 27} According to Officer Oldham, until the point at which he asked Phillips to consent to a pat-down, Phillips had been polite and cooperative. A change of temper is consistent with *Terry*'s observation about pat-down searches: that even such a limited bodily search nevertheless "constitutes a severe, though brief, intrusion upon cherished personal security, and it must surely be an annoying, frightening, and perhaps humiliating experience." Id. at 24–25, 88 S.Ct. 1868, 20 L.Ed.2d 889. Police ought not assume that subjects should submit to that gladly.

{¶ 28} What, then, caused the officers to ask for Phillips's consent, and to announce that they intended to search him if he declined? According to Officer Oldham, it was the manner of defendant's reply, denying consent to search, which the officer characterized as a "very short, sharp * * * quick answer, forceful," combined with the "totality of the circumstances." Nothing about that form of reply reasonably connotes danger. With respect to the other circumstances, two are cited in the testimony the officer gave.

{¶ 29} First, Officer Oldham testified that the area of Dayton they were in is a "high crime area," one in which robberies, assaults, thefts, and carrying-concealed-weapons offenses often occur. He also stated that he had arrested persons there for offenses of that kind that involved weapons.

{¶ 30} Second, Officer Oldham saw that defendant's front pants pockets "appeared to have a large amount of items in them that were weighing down the front of 'his pants' " and that when he asked defendant what was in his pockets,

defendant answered, "Nothing." Officer Oldham testified that the statement, which was obviously untrue, "raised the level of suspicion that there was a potential weapon involved and I asked 'him if I could * * * check to make sure he didn't have a weapon * * *. He told me: 'No.' "

{¶ 31} We are enjoined to weigh the facts and circumstances through the eyes of a reasonable and prudent police officer on the scene, who must react to events as they unfold, giving due weight to the officer's training and experience, and to view the evidence as it would be understood by persons in law enforcement. *State v. Andrews*, 57 Ohio St.3d 86, 565 N.E.2d 1271. The issue is whether a reasonably prudent man or woman in the circumstances involved would be warranted in the belief that his or her safety was at risk. *Terry*. If so, the officer may perform a search as a reasonable precaution. *State v. Andrews*. This court has applied these considerations generously in favor of officer's safety, approving weapons patdowns in the vast majority of cases that have come before us. This is not one.

{¶ 32} Bulging pockets do not connote crimes or weapons when they have no specific nexus to criminal activity, and there was none here. Defendant's response that "Nothing" was inside them was so patently untrue as to be more of an annoyed rejoinder than a false report. The fact that this was a "high crime area" does not cast these otherwise unremarkable events in a criminal light. Innocuous facts are not made criminal because they take place in a high-crime area. *State v. Maldonado* (Sept. 24, 1993), Montgomery App. No. 13530, 1993 WL 402772.

{¶ 33} In *State v. Smith* (1978), 56 Ohio St.2d 405, 10 O.O.3d 515, 384 N.E.2d 280, the Supreme Court held that officers may search the interior of a motor vehicle for weapons before allowing a driver whom they have cited for a traffic violation to return to it to drive away. However, the driver in *Smith* had made a furtive movement before exiting the vehicle, which supported a suspicion that he may have concealed a weapon inside. The related concern there was that weapons may be kept ready at hand inside a vehicle and can be turned against officers.

{¶ 34} There was no similar prospect of availability here. The pants defendant wore were described as "black * * * thin nylon, * * * jogging-type pants." They are obviously far less suited to concealment of weapons than an auto's interior. Further, nothing defendant did, including his pointed refusal to consent to be searched and saying his pockets contained "Nothing," rose to the level of the furtive movement in *Smith*.

{¶ 35} When the officers then announced that they intended to perform a pat-down search in any event, defendant moved, and they construed that to indicate

that he planned to flee. They seized and handcuffed him to prevent his flight, and then performed the patdown, which yielded the drugs that defendant later moved to suppress. Neither the handcuffing nor defendant's movement that prompted it are cited by the state as a further justification for the pat-down search. We agree. The handcuffing was not an arrest, as we have noted, and so no search incident to an arrest was justified. The defendant's movement, slight as it was, might indicate a possible flight, but it presented no appreciable prospect of danger to the officers, who had already announced their intention to perform the search.

{¶ 36} We conclude that the suspicion that the officer said he formed was not "articulable" in a constitutional sense; that is, its constituent elements lack a rational nexus leading to a conclusion, if only a suspicion reasonable in nature, that defendant was armed and a danger to the officers who had stopped him. That he was no more than a hunch. Therefore, the patdown was not reasonable for Fourth Amendment purposes.

{¶ 37} The second assignment of error is sustained.

## THIRD ASSIGNMENT OF ERROR

{¶ 38} "The decision of the trial court should also be reversed because the state's evidence failed to sufficiently articulate why the officer reasonably believed that the 'rocks' he felt in appellant's pocket were crack cocaine."

{¶ 39} Officer Oldham patted defendant's right pants pocket and felt two golf-ball sized jagged rock-like items that, based upon his previous police experience in conducting pat-down searches, Oldham immediately recognized and concluded were crack cocaine. Officer Oldham removed the items from defendant's pocket. They turned out to be crack cocaine. Officer Oldham then placed defendant under arrest.

{¶ 40} Defendant argues that Officer Oldham lacked probable cause to believe that the golf-ball sized items in defendant's pocket were crack cocaine, and thus those items could not lawfully be seized pursuant to the "plain feel" doctrine. We disagree.

{¶ 41} In *Minnesota v. Dickerson* (1993), 508 U.S. 366, 375, 113 S.Ct. 2130, 124 L.Ed.2d 334, the United States Supreme Court recognized a "plain feel" exception to the warrant requirement that is analogous to the plain-view exception:

{¶ 42} When an officer feels an object during a *Terry*-authorized patdown and the identity of that object is immediately apparent from the way it feels, the officer may lawfully seize the object if he has probable cause to believe that the item is contraband—that is, if the "incriminating character" of the object is "immediately apparent."

{¶ 43} Officer Oldham testified that he is a ten-year veteran of the police force and has performed over 500 pat-down frisks for weapons during his career. Some of those weapons frisks have yielded crack cocaine. The record demonstrates that when Officer Oldham felt the jagged rock-like items in defendant's pants pocket, based upon his experience he immediately concluded that the items were crack cocaine.

{¶ 44} *Dickerson* does not require the state to offer evidence showing "why" an officer reached a particular conclusion about the identity of an article that justifies a search and subsequent seizure of the object. It is sufficient that the officer testifies that he reached the conclusion because the identity of the object was immediately apparent to him. Why it was immediately apparent may be inferred from the officer's experience with similar objects in past situations. Any doubt about the reliability of the tactile sensations that caused the officer to reach a particular conclusion is a matter that a defendant may develop on cross-examination.

{¶ 45} Unlike the police officer in *State v. Lander* (Jan. 21, 2000), Montgomery App. No. 17898, 2000 WL 43708, who testified that he "suspected" that the item he felt in defendant's coat pocket was crack cocaine, Oldham's *conclusion* that the items in defendant's pants pocket were crack cocaine reflects a level of certainty beyond mere suspicion, and is sufficient to demonstrate that the incriminating nature of those objects was immediately apparent to Oldham. Therefore, Officer Oldham had probable cause to believe that the items were contraband sufficient to authorize the warrantless search of defendant's pocket and seizure of the object within it. *Dickerson*, supra.

{¶ 46} The third assignment of error is overruled.

Conclusion

{¶ 47} Having sustained the second assignment of error, we reverse the trial court's judgment overruling defendant's motion to suppress, vacate his conviction, and remand the case for further proceedings.

*Judgment reversed, conviction vacated and cause remanded.*

FAIN, P.J., and FREDERICK N. YOUNG, J., concur.