OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs and their oral arguments to this Court. Appellant, Alexander Blandon, appeals the decision of the trial court convicting him of one count of possession of crack cocaine in violation of R.C. 2925.11(A)(C)(4)(d), a third degree felony, and one count of possession of drugs in violation of R.C. 2925.11(A)(C)(1)(a), a felony of the fifth degree, and sentencing him to a two year prison term and a one year prison term to be served concurrently.
 {¶ 2} With this appeal, Blandon claims that the trial court erred by denying his motion to suppress the drugs found in his pocket by an officer who was conducting a pat down search for weapons. We find the trial court erred by denying Blandon's motion to suppress as the nature of the contraband discovered in Blandon's pocket was not immediately apparent to the officer conducting the pat down search, as was conceded by the officer himself. Accordingly, we reverse the decision of the trial court, vacate Blandon's convictions and remand this case for further proceedings.
 {¶ 3} On October 31, 2005, Officer Kenneth Blair of the Youngstown Police Department made a traffic stop on a vehicle driven by Blandon after he witnessed the vehicle run two stop signs. After performing a pat down for weapons on Blandon, Blair discovered crack cocaine in one of Blandon's pockets. Blandon was then arrested and charged with one count of possession of crack cocaine in violation of R.C.2925.11(A)(C)(4)(d), a felony of the third degree, and one count of possession of drugs in violation of R.C. 2925.11(A)(C)(1)(a), a felony of the fifth degree.
 {¶ 4} On February 3, 2006, Blandon filed a Motion to Suppress alleging that the seizure of the drugs resulting in his indictment was a result of an illegal warrantless search performed during a pat down for weapons. In that motion, Blandon conceded that Officer Blair had the right to order him out of the car and pat him down for weapons based upon his behavior.
 {¶ 5} A hearing on the motion was conducted and testimony was given. However, the trial court ultimately denied Blandon's Motion to Suppress and Blandon chose to plead no contest to the charges. Blandon was sentenced on December 13, 2006 to a two *Page 2 
year term of incarceration on count one and to a one year term of incarceration on count two, to be served concurrently.
 {¶ 6} As his sole assignment of error, Blandon states:
 {¶ 7} "The trial court erred in overruling Defendant/Appellant's motion to suppress as the crack cocaine and illegal drugs were the fruit of an unconstitutional search and seizure and therefore must be suppressed."
 {¶ 8} Our standard of review with respect to a motion to suppress is first limited to determining whether the trial court's findings are supported by competent, credible evidence. State v. Winand (1996),116 Ohio App.3d 286, 288, 688 N.E.2d 9, citing Tallmadge v. McCoy (1994),96 Ohio App.3d 604, 608, 645 N.E.2d 802. Such a standard of review is appropriate as, "[i]n a hearing on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." State v. Venham (1994), 96 Ohio App.3d 649, 653,645 N.E.2d 831. An appellate court accepts the trial court's factual findings and relies upon the trial court's ability to assess the witness's credibility, but independently determines, without deference to the trial court, whether the trial court applied the appropriate legal standard. State v. Rice (1998), 129 Ohio App.3d 91, 94, 717 N.E.2d 351. A trial court's decision on a motion to suppress will not be disturbed when it is supported by substantial credible evidence. Id.
 {¶ 9} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution secure an individual's right to be free from unreasonable searches and seizures. A warrantless search and seizure by law enforcement personnel of an article or place in which an individual has a reasonable expectation of privacy is per se unreasonable, unless it falls within a recognized exception to the warrant requirement. Minnesota v. Olson (1990), 495 U.S. 91,110 S.Ct. 1684, 109 L.Ed.2d 85; State v. Miller (1991), 77 Ohio App.3d 305,602 N.E.2d 296.
 {¶ 10} Here, it is uncontested that Officer Blair had the right to conduct a protective pat down search for weapons. However, Blandon claims that the officer exceeded his authority when he seized a baggy of crack cocaine from his pocket arguing that it did not *Page 3 
fall under the "plain feel" exception. In Minnesota v. Dickerson (1993),508 U.S. 366, 375, 113 S.Ct. 2130, 124 L.Ed.2d 334, the United States Supreme Court recognized a "plain feel" exception to the warrant requirement that is analogous to the plain view exception:
 {¶ 11} "When an officer feels an object during a Terry-authorized pat-down and the identity of that object is immediately apparent from the way it feels, the officer may lawfully seize the object if he * * * has probable cause to believe that the item is contraband — that is, if the `incriminating character' of the object is `immediately apparent." `
 {¶ 12} However, the Court cautioned that the officer may not manipulate the object, which he has previously determined not to be a weapon, in order to ascertain its incriminating nature. Id. at 378. The incriminating nature of the object must be "immediately apparent" and give rise to probable cause to believe the item is contraband. Id.
 {¶ 13} In Dickerson, the Court noted that the arresting officer testified as follows:
 {¶ 14} "I felt a lump, a small lump, in the front pocket. I examined it with my fingers and it slid and it felt to be a lump of crack cocaine in cellophane."
 {¶ 15} The Court then concluded that the plain feel exception was inapplicable and noted:
 {¶ 16} "* * * the Minnesota Supreme Court, after `a close examination of the record,' held that the officer's own testimony `belies any notion that he "immediately" `recognized the lump as crack cocaine. See 481 N.W.2d at 844. Rather, the court concluded, the officer determined that the lump was contraband only after `squeezing, sliding and otherwise manipulating the contents of the defendant's pocket' — a pocket which the officer already knew contained no weapon." Id.
 {¶ 17} Here, Officer Blair, who testified he had been employed with the Youngstown Police Department for over seven years, had been out patrolling the south side of the city. He witnessed a vehicle go through two stop signs without stopping, activated his lights, and pulled the car over. Officer Blair had the suspect, Blandon, exit the vehicle and "walk back" to his cruiser," during which Blandon kept reaching into his *Page 4 
waistband, which concerned the officer.
 {¶ 18} Officer Blair testified that he made other stops in the area where drugs had been involved and there had been weapons violations. Because he was afraid that Blandon may have been concealing a weapon he requested backup before conducting a pat down search. During the search, Officer Blair recovered crack cocaine from Blandon's clothing.
 {¶ 19} When asked what led him to seize that particular item, Officer Blair responded:
 {¶ 20} "As I went over the pocket it was in, I felt — I felt the pocket, because I was feeling for weapons, and came across the crack cocaine."
 {¶ 21} When questioned further why he believed the item to be drugs, Officer Blair testified:
 {¶ 22} "What led me to believe it was drugs was the way it felt. It felt like crack cocaine from my experience of prior arrests. It had — it felt like chunks of wax almost, and the cellophane it was wrapped in, it has a slippery type feel to it."
 {¶ 23} On cross-examination, Officer Blair was asked whether he actually placed his hands into the pocket to manipulate the pocket. He responded that he did not place his hands inside of the pocket, but could feel the waxy substance with the palm of his hand. The following exchange then took place.
 {¶ 24} Attorney: So your statement is that you're just patting, and that's all you felt was what was in his pocket? Was there anything else in his right front pocket?
 {¶ 25} Officer Blair: Not that I recall.
 {¶ 26} Attorney: Anything in his left front pocket?
 {¶ 27} Officer Blair: Not that I recall.
 {¶ 28} Attorney: Did you feel the baggy itself? Could you tell it was a baggy in his pocket?
 {¶ 29} Officer Blair: Yes, sir.
 {¶ 30} Attorney: How did you do that?
 {¶ 31} Officer Blair: Because of the sensation when I went over his pocket. *Page 5 
 {¶ 32} Attorney: Was it so large that it was folded up in his pocket?
 {¶ 33} Officer Blair: Yes, it was. It wasn't folded up. It was more crinkled I guess would be a better adjective.
 {¶ 34} Attorney: And you had no idea what was in his pocket at that time? You had no idea because you hadn't looked at it; is that correct?
 {¶ 35} Officer Blair: Exactly, no, but I had my suspicions.
 {¶ 36} * * *
 {¶ 37} Attorney: And it's also your testimony that you never, while you had your hands outside of Mr. Blandon, manipulated his pocket in any way, felt what was in there? You see what I'm doing right now? I've got things in my pocket, and I'm sort of-
 {¶ 38} Officer Blair: I did once I suspected it was crack cocaine, yes.
 {¶ 39} Attorney: You felt around there?
 {¶ 40} Officer Blair: Once I suspected it was crack cocaine.
 {¶ 41} Attorney: Once you suspected, but you didn't know, you wanted to determine if it was crack cocaine, but you felt around; isn't that fair?
 {¶ 42} Officer Blair: Like I would do with a weapon or anything.
 {¶ 43} Officer Blair was then questioned on redirect by the State and testified that when he felt something in Blandon's front pocket, he suspected crack cocaine and then he immediately "thought" it was crack cocaine.
 {¶ 44} Finally on recross, the following exchange took place:
 {¶ 45} Attorney: Okay. Now, did you, or did you not make additional motions with your hand on Mr. Blandon's pocket other than just patting it? Did you feel — I don't want to know when. I want to know if you did. Yes or no. Did you make additional motions other than just patting his pocket before you took anything out of his pocket? Yes or no?
 {¶ 46} Officer Blair: Yes, once I —
 {¶ 47} Attorney: All right. Okay. Now, regardless of what you had determined or thought, what specific motions or procedure did you use at that time? What did you do? Do you understand the question? *Page 6 
 {¶ 48} Officer Blair: Yes, I understand the question.
 {¶ 49} Attorney: Okay. Go ahead and answer it.
 {¶ 50} Officer Blair: I felt the rocks.
 {¶ 51} Attorney: And how did you do that?
 {¶ 52} Officer Blair: With my hand.
 {¶ 53} Attorney: And will you — did you do this, just pat, or again, did you use your fingertips?
 {¶ 54} Officer Blair: I used my fingertips.
 {¶ 55} Attorney: That's all.
 {¶ 56} Courts have found that where the officer testifies that he merely suspects that the object is crack cocaine and then manipulates it further, an unreasonable search and seizure has occurred. For example, in State v. Williams (Sept. 3, 2004), 2nd Dist. No. 20255, the Second District found that the arresting officer violated the appellant'sFourth Amendment rights when retrieving crack cocaine during a protective pat down search. Although the officer testified that he first believed the item in the appellant's pocket was crack cocaine when he felt it with the palm of his open hand, the officer conceded that, before he reached into the pocket to seize the item, he felt the item with his fingertips to determine what the item was. After reviewing this testimony, the Williams court vacated the appellant's conviction based upon the improper seizure of evidence.
 {¶ 57} The First District came to the same conclusion in State v.Robinson (Nov. 3, 2000), 1st Dist. No. C-000135, explaining:
 {¶ 58} "Here, Kirkland did not testify that he believed that the small lump in Robinson's pocket was a weapon, nor could he reasonably have believed it to be so given its size. Accordingly, he could only have lawfully seized the object if he had immediately, and without further manipulating it, recognized that it was contraband. Kirkland's testimony, however, negates such a conclusion. According to his testimony, it was only after he had used his fingers to further investigate the object that he came to believe that it was crack cocaine. Given these circumstances, the trial court correctly concluded that Kirkland's pat down of Robinson exceeded the permissible scope of Terry and resulted in *Page 7 
a violation of the Fourth Amendment." Id. at 2.
 {¶ 59} Finally, in State v. Lander (Jan. 21, 2000), 2d Dist. No. 17898 the Second District determined that mere suspicion that an item was crack cocaine was not enough to justify the item's seizure. The court explained:
 {¶ 60} "In the case before us, Officer House testified that he could feel a small, hard object in the lower corner of Lander's coat pocket when he was patting it down for weapons. In order to reach a conclusion that this object was a piece of crack cocaine, the State necessarily relies upon Officer House's training and experience with respect to crack cocaine, which appears to have been extensive. Significantly, Officer House made no claim that he had probable cause to believe that the object was crack cocaine. On each of the two occasions when he covered this point in his testimony, he used the word `suspected' to describe his conclusion, clearly indicating that his conclusion that the object might be crack cocaine was merely a suspicion, rather than probable cause to believe, that the object was crack cocaine." Id. at 4.
 {¶ 61} In contrast, however, are cases where the officer establishes that the incriminating nature of that object was immediately apparent to him without manipulating the object or taking any other actions to further identify the object prior to removing it. In those situations, courts have found that the officer may permissibly retrieve that contraband. State v. Phillips, 155 Ohio App.3d 149, 2003-Ohio-5742,799 N.E.2d 653; State v. Stewart, Montgomery App. No. 19961, 2004-Ohio-1319;State v. Bostick, Cuyahoga App. No. 81900, 2003-Ohio-3252; State v.Chancellor (Jan. 21, 2000), Montgomery App. No. 17560.
 {¶ 62} Officer Blair's testimony on cross indicates that it was not immediately apparent that what he was feeling was crack cocaine as he merely "suspected" that it was crack cocaine. Moreover, his testimony on cross clarified that he was not positive of what he was feeling until he used his fingertips to feel what was in Blandon's pocket. However, whether the nature of what Officer Blair was feeling was immediately apparent to him was a question of fact for the trial court to decide.
 {¶ 63} Notably, the trial court found that, *Page 8 
 {¶ 64} "Officer Blair admitted to Attorney Van Brocklin that after feeling the slippery substance, he used his fingertips to squeeze the pants material in the area of the pocket of Defendant to determine that there were hard substances in his pocket. However, Officer Blair testified that he was searching for weapons."
 {¶ 65} The trial court further stated:
 {¶ 66} "Immediately, Officer Blair stated that he felt a packet within the Defendant's pocket that felt like `chunks of wax' as it was `slippery.'
 {¶ 67} "Further, Officer Blair, with the experience he had previously had including that of making prior seizures of crack cocaine, recognized that the slipperiness that he felt was that of a plastic bag contained within the Defendant's pocket. * * *
 {¶ 68} "With the amount of crack cocaine rocks contained within the bag within Defendant's pocket it is without question that an experienced officer's sense of touch during a pat down search for weapons would signal to him that the existence of something he had felt before was contained within Defendant's pocket."
 {¶ 69} Notably, the trial court also concluded that Officer Blair manipulated Blandon's pockets, but that once he did; it was obvious that what he was feeling was crack cocaine. However, the trial court did not find error with this manipulation as it explained that Officer Blair was permissibly searching for weapons. Thus, the trial court applied an incorrect legal standard to the facts in this case. Because this court independently determines whether the trial court applied the appropriate legal standard, we are reversing the trial court's decision based upon our application of the appropriate legal standard to the facts in this case. The United States Supreme Court in Dickerson unequivocally held that where, as here, an officer cannot determine whether a defendant has contraband on his person from the initial patdown, the officer's manipulation of the suspected contraband to determine its nature is a violation of the defendant's Fourth Amendment rights.
 {¶ 70} Given the trial court's own findings and the state of the law in Ohio, we conclude that the trial court erred by denying Blandon's motion to suppress. Accordingly, the judgment of the trial court is reversed, Blandon's convictions are vacated and this *Page 9 
case is remanded to the trial court for further proceedings.
Donofrio, J., concurs.
 Waite, J., concurs. *Page 1