[Cite as *State v. Fredo*, 2012-Ohio-1496.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO. 11 CO 5 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | O P I N I O N |
| | ) | |
| JUSTIN FREDO, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |


CHARACTER OF PROCEEDINGS:     Criminal Appeal from Common Pleas
                              Court, Case No. 09CR64.


JUDGMENT:                     Affirmed.


APPEARANCES:
For Plaintiff-Appellee:       Attorney Robert Herron
                              Prosecuting Attorney
                              Attorney Tammie Jones
                              Assistant Prosecuting Attorney
                              105 South Market Street
                              Lisbon, Ohio  44432



For Defendant-Appellant:      Attorney Mark Carfolo
                              23 Lisbon Street, Suite K
                              Canfield, Ohio  44406



JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Mary DeGenaro

Dated: March 30, 2012

VUKOVICH, J.

{¶1} Defendant-appellant Justin Fredo appeals the decision of the Columbiana County Common Pleas Court denying his motion to suppress. Fredo argues that the trooper did not have probable cause to stop him. This position is based upon Fredo's belief that displaying a permanent license plate in the rear window of his vehicle complied with R.C. 4503.21. The state disagrees and contends that the placement of the license plate violated R.C. 4503.21 and thus, there was probable cause for the stop.

{¶2} For the reasons discussed below, the state is correct; placement of a permanent license plate in the rear window of a vehicle violates R.C. 4503.21. Thus, the judgment of the trial court is affirmed.

STATEMENT OF THE CASE

{¶3} On July 30, 2009, a two count indictment was issued against Fredo for driving under the influence of alcohol and/or drugs, in violation of R.C. 4511.19(A)(1)(d) and R.C. 4511.19(A)(1)(a). The indictment alleged that Fredo had previously been found guilty or pled to three other violations of R.C. 4511.19(A) or (B) within the past six years. Thus, that elevated the charges against him to fourth-degree felonies. Fredo pled not guilty to the charges.

{¶4} He then filed a motion to dismiss or exclude evidence based upon his belief that the underlying convictions supporting the enhanced degree for the offenses were constitutionally infirm. After reviewing the arguments the trial court concluded that one of the convictions could not be used to enhance the charges because there was no oral record of the proceedings to determine whether there was a meaningful dialogue prior to Fredo's waiver of counsel. 04/12/10 J.E. Thus, the trial court found that Fredo could only be tried for an unclassified misdemeanor; the charge could not be enhanced. 04/12/10 J.E.

{¶5} Fredo then filed a motion to suppress. The motion originally contained a multitude of arguments as to why the evidence of his impairment had to be suppressed. However, after discussions with the state, the argument was narrowed to

one issue – whether the trooper had a reasonable articulable suspicion/probable cause to stop Fredo. After a hearing, at which only the Trooper testified, the trial court denied the motion to suppress. It explained:

**{¶6}** "The Trooper indicated that he noticed no rear license plate on the vehicle and then pulled from his stationary position, activating his overhead lights, and stopping the vehicle. He stated that once his overhead lights were activated, he could see a license plate secured to the rear window of the cab of the truck that Defendant was operating. He indicated that such a display is not in compliance with Ohio law. O.R.C. §4503.21.

**{¶7}** "The Trooper approached the vehicle for the reason of the improper display but indicated that other issues soon became apparent to him. He cited the Defendant for the improper display of the plate and advised the Court that he his [sic] personal report for the evening in question indicated that the improper display was his reason for following and stopping the vehicle."

**{¶8}** Following the suppression ruling, Fredo entered a plea agreement with the state and pled no contest to R.C. 4511.19(A)(1)(d), an unclassified first-degree misdemeanor. Count two of the indictment was dismissed. Fredo was sentenced to 12 months in jail, with the first 30 days being mandatory. He was also fined $1,500 and ordered to attend an alcohol and drug addiction program upon completion of his sentence. The court suspended his license for ten years. The sentence was stayed pending appeal. 01/11/11 J.E.

## ASSIGNMENT OF ERROR

**{¶9}** "THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT-APPELLANT'S MOTION TO SUPPRESS AND VIOLATED HIS RIGHTS TO BE FREE FROM UNLAWFUL SEIZURE UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES AND OHIO CONSTITUTION."

**{¶10}** Appellate review of a suppression decision presents a mixed question of law and fact. *State v. Roberts,* 110 Ohio St.3d 71, 2006–Ohio–3665, 850 N.E.2d 1168, ¶ 100. On factual matters, the trial court occupies the best position to evaluate the credibility of witnesses and weigh the evidence. *Id.,* citing *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). Thus, factual findings are accorded great

deference. *Id.,* citing *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). The trial court's legal conclusions are reviewed de novo. *Id.,* citing *State v. Burnside,* 100 Ohio St.3d 152, 2003–Ohio–5372, 797 N.E.2d 71, ¶ 8.

{¶11} The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." A law enforcement officer's stop of an automobile must comply with the Fourth Amendment's reasonableness requirement. *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769; 135 L.Ed.2d 89 (1996). A stop may be justified as a noninvestigatory traffic stop where a police officer has probable cause to believe a traffic offense has occurred or was occurring. *Id.*

{¶12} Here, it is undisputed that the sole reason for stopping Fredo was because the permanent license plate was not affixed to the bumper of the vehicle Fredo was operating, which is allegedly a violation of R.C. 4503.21(A). The Trooper testified that Fredo was not speeding or driving erratic and that there was no other basis for the stop. Thus, the issue before this court is purely a legal issue. It is whether the display of a permanent license plate in the rear window of the vehicle is a violation of R.C. 4503.21(A).

{¶13} R.C. 4503.21(A) governs the display of permanent and temporary license plates. It states:

{¶14} "(A) No person who is the owner or operator of a motor vehicle shall fail to display in plain view on the front and rear of the motor vehicle the distinctive number and registration mark, including any county identification sticker and any validation sticker issued under sections 4503.19 and 4503.191 of the Revised Code, furnished by the director of public safety, except that a manufacturer of motor vehicles or dealer therein, the holder of an in transit permit, and the owner or operator of a motorcycle, motorized bicycle, manufactured home, mobile home, trailer, or semitrailer shall display on the rear only. * * * All license plates shall be securely fastened so as not to swing, and shall not be covered by any material that obstructs their visibility.

{¶15} "No person to whom a temporary license placard or windshield sticker has been issued for the use of a motor vehicle under section 4503.182 of the Revised Code, and no operator of that motor vehicle, shall fail to display the temporary license

placard in plain view from the rear of the vehicle either in the rear window or on an external rear surface of the motor vehicle, or fail to display the windshield sticker in plain view on the rear window of the motor vehicle. No temporary license placard or windshield sticker shall be covered by any material that obstructs its visibility."

{¶16} Fredo is of the position that displaying his permanent license plate in the rear cab window of his truck complied with R.C. 4503.21's mandates. He asserts that once the trooper saw the plate, the trooper could not detain him any further absent some specific and articulable facts that there was criminal activity. He cites the Ohio Supreme Court's *Chatton* decision to support his position. *State v. Chatton*, 11 Ohio St.3d 59, 463 N.E.2d 1237 (1984).

{¶17} In *Chatton*, the driver was stopped because the officer did not see a front or rear license plate on the vehicle. Upon approaching the vehicle, the officer noticed that a temporary tag was visible in the rear windshield. The Supreme Court held:

{¶18} "Consequently, where a police officer stops a motor vehicle which displays neither front nor rear license plates, but upon approaching the stopped vehicle observes a temporary tag which is visible through the rear windshield, the driver of the vehicle may not be detained further to determine the validity of his driver's license absent some specific and articulable facts that the detention was reasonable. As a result, any evidence seized upon a subsequent search of the passenger compartment of the vehicle is inadmissible under the Fourth Amendment to the United States Constitution." *Id.* at 63.

{¶19} The *Chatton* Court opined that "because the police officer no longer maintained a reasonable suspicion that appellee's vehicle was not properly licensed or registered, to further detain appellee and demand that he produce his driver's license is akin to [a] random detention[.]" *Id.* The Court then concluded that "[a]lthough the police officer, as a matter of courtesy, could have explained to appellee the reason he was initially detained, the police officer could not unite the search to this detention, and appellee should have been free to continue on his way without having to produce his driver's license." *Id.*

{¶20} This decision was made prior to the current version of R.C. 4503.21, which dictates the manner in which temporary tags must be displayed.

{¶21} If Fredo's rear plate was properly displayed, *Chatton* does provide a basis for overturning the trial court's suppression ruling. That said, *Chatton* does not provide guidance as to whether Fredo's rear plate was properly displayed in accordance with R.C. 4503.21. *Chatton* is distinguishable because it deals with a temporary tag. The case at hand deals with the display of permanent license plates.

{¶22} The statute quoted above clearly dictates that a temporary tag can be displayed in plain view on the rear of vehicle "either in the rear window or on an external rear surface of the motor vehicle." R.C. 4503.21(A). As to a permanent license plate it must be displayed "in plain view on the front and rear of the motor vehicle." *Id.*

{¶23} The clear language of the statute requires the permanent plate to be "on the * * * rear of the motor vehicle." Common sense dictates that **on the rear of the vehicle** means mounted to the exterior rear of the vehicle. It does not mean placement in the rear window. If it had meant placement in the rear window, the word "on" would not have been used.

{¶24} Furthermore, the general assembly's allowance for placing a temporary tag in the rear window indicates that it knew how to specify that such a placement was valid. It did not use that language when discussing a permanent license plate. Rather, it stated **on** the rear of the motor vehicle. Had it been the intention of the general assembly to allow placement of a permanent license plate in the rear window of the vehicle legal, it could have used the same language it used for discussing a temporary tag. As it did not, placing a permanent license plate in the rear window of the vehicle is a violation of R.C. 4503.21(A). Therefore, it would constitute probable cause for the stop.

{¶25} This conclusion is supported by case law from our sister districts. It has been explained that the intent of the statute is to "require that license plates be visible to law enforcement personnel and others who may have reason to note the number for identification purposes." *Lakewood v. Shelton*, 8th Dist. No. 95746, 2011-Ohio-4408, ¶ 15, quoting *State v. Durfee*, 11th Dist. Nos. 96–L–198, 1998 WL 156857 (Mar. 6, 1998). See also *City of Miamisburg v. Adams*, 2d Dist. No. 14333, 1994 WL 527868 (Sept. 30, 1994) (stating "A license plate is required by law to be in plain view,

exposed to the sight of anyone positioned behind the car. R.C. 4503.21."). Here, the trooper testified that he could not see the permanent license plate until his take down lights were activated. (Tr. 12). He explained that take down lights, unlike head lights, shine directly into the cab. (Tr. 12). Therefore, while the plate would be visible to the officer, it would only be visible once the take down lights were activated. For any other driver on the road, the plate would not be visible and thus, allowance of the plate to be placed in the rear window would fraught the intent of the statute.

{¶26} Furthermore, at least one court has found that the statute's requirement for the plate to be placed on the front and rear of the vehicle does not mean the rear or front window. The Second Appellate District has found that a permanent license plate lying on the front dashboard of the vehicle does not comply with R.C. 4503.21 and provides probable cause for the stop. *State v. Phillips*, 155 Ohio App.3d 149, 2003-Ohio-5742, 799 N.E.2d 653 (2d Dist.). In that case, the court aptly explained:

{¶27} "A license plate may be 'in plain view' for purposes of R.C. 4503.21 to a person who sees it positioned on the dashboard of a vehicle, but so long as it is inside the vehicle, the plate is not displayed 'on the front' of the vehicle. To satisfy that requirement, the plate must be mounted to the vehicle's exterior, on its front side, and in plain view. Because the plate located on the dashboard of the vehicle defendant drove failed those requirements, the officers had probable cause to stop him in order to cite him for a violation of R.C. 4503.21. The stop was therefore reasonable for purposes of the Fourth Amendment under the rule of *Dayton v. Erickson,* 76 Ohio St.3d 3, 665 N.E.2d 1091. Further, the officers were authorized to detain defendant until they had completed the process of citing him for the R.C. 4503.21 violation." *Id.* at ¶ 19. See also *State v. Hanna*, 6th Dist. No. WM-99-016, 2000 WL 262356 (Mar. 10, 2000) (stating license lying on front dashboard); *Durfee*, 11th Dist. Nos. 96–L–198, 1998 WL 156857 (stating license on front dashboard); *State v. Poole*, 9th Dist. No 2336-M, 1995 WL 338477 (June 7, 1995) (finding license plate lying on front dashboard violated R.C. 4503.21 because it was not plainly visible).

{¶28} Even though we are dealing with the rear window, instead of the front window and dashboard, we find that this reasoning equally applies here. Accordingly, we adopt this reasoning as our own.

{¶29} In conclusion, this assignment of error lacks merit. The placement of a permanent license plate in the rear window of a vehicle violates R.C. 4503.21. Thus, the trooper had probable cause to stop Fredo.

{¶30} For the foregoing reasons, the judgment of the trial court is hereby affirmed.

Donofrio, J., concurs.
DeGenaro, J., concurs.