[Cite as *State v. Anderson*, 2018-Ohio-2455.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2017-L-127** |
| MICHAEL A. ANDERSON, JR., | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 2017 CR 000042.

Judgment: Affirmed.


*Charles E. Coulson*, Lake County Prosecutor, and *Teri R. Daniel*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Timothy S. Deeb*, Interstate Square Building I, Suite 240, 4230 State Route 306, Willoughby, OH 44094 (For Defendant-Appellant).


DIANE V. GRENDELL, J.

{¶1} Defendant-appellant, Michael A. Anderson, Jr., appeals from the judgment of the Lake County Court of Common Pleas, denying his Motion to Suppress. The issues to be determined by this court are whether a traffic stop was properly conducted when the defendant's front license plate was placed on his dashboard and whether there is probable cause to conduct a search of a vehicle when an officer observes marijuana "shake," notes the defendant's drug-related criminal record, and smells burnt

marijuana after removing the defendant from the vehicle. For the following reasons, we affirm the decision of the court below.

{¶2} On March 13, 2017, the Lake County Grand Jury issued an Indictment, charging Anderson with Trafficking in Marijuana (Count One), a felony of the fifth degree, in violation of R.C. 2925.03(A)(2); Possessing Criminal Tools (Count Two), a felony of the fifth degree, in violation of R.C. 2923.24; and Use or Possession of Drug Paraphernalia (Count Three), a misdemeanor of the fourth degree, in violation of R.C. 2925.14(C)(1). All counts had forfeiture specifications pursuant to R.C. 2941.1417 and 2981.04.

{¶3} Anderson filed a Motion to Suppress Evidence/Motion in Limine on April 27, 2017, raising various issues with the stop and search of his vehicle. A hearing was held June 5, 2017, at which the following testimony was presented:

{¶4} Mentor Police Department Patrolman Bryan Distelrath testified regarding the stop which occurred at 11:59 a.m. on December 30, 2016. While sitting stationary and observing traffic, he saw Anderson did not have a license plate on the front bumper of his vehicle. After effectuating a stop of Anderson, he approached the vehicle from the passenger side and noticed that the license plate was "on the dashboard." Distelrath described that the plate was not "in plain view" and was "up against the window tilted back * * * about 45 degrees, maybe a little bit more. It wasn't straight up and down where it was visible." He informed Anderson of the reason for the stop and immediately noticed "marijuana shake" in "several locations inside the vehicle." He described this as "a little bit of marijuana, a little bit of residue." He recognized the substance from his training and experience. After observing the shake, he called

another unit to the scene as he intended to conduct a search of the vehicle.

{¶5} The dashboard camera video and Distelrath's testimony showed that after speaking with Anderson for approximately 40 seconds, Distelrath returned to his vehicle and performed a check on Anderson's information through his computer. Distelrath found prior license suspensions for drug trafficking and a recent offense relating to marijuana possession. Approximately six minutes after returning to his cruiser, Distelrath asked Anderson to exit his vehicle. While searching Anderson, he noted the smell of burnt marijuana. Anderson was arrested following a vehicle search, which discovered marijuana. He was also issued a written warning for the plate violation.

{¶6} When asked during cross-examination why Distelrath did not notice the smell of marijuana until after Anderson was removed from the vehicle, he explained that there were several air fresheners hanging from the rear-view mirror.

{¶7} The court issued an Opinion and Judgment Entry on July 5, 2017, in which it denied the Motion to Suppress. In describing the facts, the court noted that the license plate was "up against the windshield leaning at 45 degrees" and that Distelrath "was unable to see the license plate" prior to approaching the vehicle. The court found that Distelrath saw the marijuana "shake" when speaking with Anderson, returned to his car, initiated a computer check on Anderson and noted prior drug-related charges, and had initially planned on issuing a warning but "concluded that he had probable cause to search Anderson's car." The court held that since the license plate was not "in plain view," the stop was proper, and Distelrath was then permitted to run a computer check on Anderson's driver's license. The court also concluded that since Distelrath saw the shake in plain view during a valid stop, he had probable cause to search the vehicle.

3

{¶8} On July 27, 2017, Anderson entered a plea of no contest to the charges as contained in the indictment.

{¶9} Following a sentencing hearing, the court issued a September 7, 2017 Journal Entry, ordering Anderson to serve a term of seven months in prison, which was stayed pending appeal.

{¶10} Anderson timely appeals and raises the following assignment of error:

{¶11} "The trial court erred by failing to grant appellant's motion to suppress."

{¶12} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. At a suppression hearing, "the trial court is best able to decide facts and evaluate the credibility of witnesses." *State v. Mayl*, 106 Ohio St.3d 207, 2005-Ohio-4629, 833 N.E.2d 1216, ¶ 41. "Its findings of fact are to be accepted if they are supported by competent, credible evidence." *Id.* The reviewing court must then "independently determine as a matter of law, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." (Citation omitted.) *State v. Leak*, 145 Ohio St.3d 165, 2016-Ohio-154, 47 N.E.3d 821, ¶ 12; *State v. Orosz*, 2017-Ohio-707, 86 N.E.3d 50, ¶ 22 (11th Dist.) ("[o]nce the appellate court accepts the trial court's factual determinations, the appellate court conducts a de novo review of the trial court's application of the law to these facts") (citation omitted).

{¶13} Anderson raises two arguments in support of his contention that suppression was warranted. First, he asserts that Distelrath "should have discontinued the traffic stop" upon noticing that the front license plate was "clearly visible in plain view," i.e., when he approached the car and saw the plate was on the dashboard.

4

{¶14} "A police officer may stop an individual if the officer has a reasonable suspicion, based on specific and articulable facts that criminal behavior has occurred * * *." *State v. Tarrance*, 11th Dist. Portage No. 2012-P-0073, 2013-Ohio-2831, ¶ 19, citing *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The reasonable suspicion necessary to conduct an investigatory stop "involves a consideration of 'the totality of the circumstances.'" *Maumee v. Weisner*, 87 Ohio St.3d 295, 299, 720 N.E.2d 507 (1999). Reasonable suspicion to conduct an investigative stop exists in the case of a minor traffic offense. *State v. Parsons*, 2016-Ohio-8109, 74 N.E.3d 945, ¶ 25 (11th Dist.).

{¶15} An investigatory stop must be limited in duration and scope and can last only as long as necessary for an officer to confirm the suspicion of criminal activity. *State v. Weimer*, 11th Dist. Lake No. 2013-L-008, 2013-Ohio-5651, ¶ 44.

{¶16} Anderson was stopped for failure to properly display a front license plate. R.C. 4503.21(A)(1) states that "[n]o person who is the owner or operator of a motor vehicle shall fail to display in plain view on the front and rear of the motor vehicle a license plate * * *." "All license plates shall be securely fastened so as not to swing, and shall not be covered by any material that obstructs their visibility." R.C. 4503.21(A)(2).

{¶17} While Anderson argues that having his license plate displayed in the front windshield complied with these requirements, we disagree. Distelrath testified that he did not see the plate until he approached the passenger side door of the vehicle, and noted that the plate, while propped up in the front windshield, was "tilted back" and "wasn't straight up and down where it was visible." He described it as not "in plain view." The trial court found that Distelrath did not see the plate prior to approaching the

5

vehicle, concluding that it was not in plain view. Under these facts, the display of the plate was not in compliance with the statutory requirements.

{¶18} Multiple courts have found a violation of R.C. 4503.21 under similar circumstances. *See State v. Durfee*, 11th Dist. Lake No. 96-L-198, 1998 WL 156857, *3-4 (Mar. 6, 1998) (license plate lying on the dashboard constitutes improper display); *State v. Haren*, 5th Dist. Stark No. 2014CA00196, 2015-Ohio-2849, ¶ 12 (the officer had "specific and articulable facts" to stop appellant where the license plate lying on the dashboard was not in the plain view of the officer); *also State v. Phillips*, 155 Ohio App.3d 149, 2003-Ohio-5742, 799 N.E.2d 653, ¶ 19 (2d Dist.) (concluding that a plate placed on the dashboard was not "on the front" of the vehicle, violating R.C. 4503.21). As this court has explained, "[t]he intent of the law is to require that license plates be visible to law enforcement personnel and others who may have reason to note the number for identification purposes." *Durfee* at *3. Since Distelrath could only see the license plate number after he approached the vehicle on foot following the stop, the purpose of the statute was not satisfied by propping the license plate up on the dashboard.

{¶19} Anderson's argument that the stop should have been discontinued when Distelrath saw the license plate lacks merit since Distelrath was permitted to conduct an investigation relating to the traffic violation, the driver's identity, and issue a warning or citation. *See State v. Molek*, 11th Dist. Portage No. 2001-P-0147, 2002-Ohio-7159, ¶ 32 ("[o]nce a law enforcement officer has validly stopped a vehicle, he may detain the occupants for a period of time sufficient to run a computer check on the driver's license, registration, and vehicle plates and to issue the driver a warning or citation"). To the

6

extent that Anderson argues Distelrath continued the detention "without issuing a citation or warning," Distelrath testified at the suppression hearing that a written warning was issued to Anderson.

**{¶20}** Anderson also argues that, even if the stop was proper, the presence of marijuana shake alone did not provide probable cause to search his vehicle.

**{¶21}** Generally, for a search to be reasonable under the Fourth Amendment, "it must be based upon probable cause and executed pursuant to a warrant." *State v. Moore,* 90 Ohio St.3d 47, 49, 734 N.E.2d 804 (2000). The United States Supreme Court has long recognized an "automobile exception" to the Fourth Amendment's requirement that police officers must generally obtain a warrant before conducting a search. *California v. Carney*, 471 U.S. 386, 390, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985). Under the automobile exception, "[i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment permits police to search the vehicle without more." *Pennsylvania v. Labron*, 518 U.S. 938, 940, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996), citing *Carney* at 393.

**{¶22}** "Probable cause exists where 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." (Citation omitted.) *Brinegar v. United States*, 338 U.S. 160, 175-176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). "A determination of probable cause is made from the totality of the circumstances." *State v. McCorvey*, 11th Dist. Ashtabula No. 2010-A-0038, 2011-Ohio-3627, ¶ 18.

**{¶23}** Distelrath testified that the presence of marijuana shake provided him with

probable cause to conduct a search of the vehicle. The lower court concluded that "[w]ith the finding of marijuana 'shake' in plain view in Anderson's car, the officer had probable cause to search the car including the trunk for additional marijuana or evidence of marijuana use."

{¶24} Anderson cites to several cases he alleges support his argument that the presence of marijuana shake alone does not provide probable cause to conduct a search. The cases cited in his brief do not address the issue of whether the existence of shake alone would justify a search since they had additional factors present as well, such as the odor of marijuana. *See, e.g.*, *State v. Ross*, 9th Dist. Medina No. 15CA0021-M, 2016-Ohio-7082, ¶ 13; *State v. Vega*, 2017-Ohio-651, 79 N.E.3d 600, ¶ 17 (8th Dist.).

{¶25} Even presuming that the presence of marijuana shake alone did not provide probable cause, as the State contends, there were multiple grounds present to support a probable cause determination. Distelrath testified that, after he returned to his cruiser and entered Anderson's information into his computer, permissible as part of the traffic stop, he discovered that Anderson had many previous license suspensions for drug trafficking, as well as a recent arrest or citation for possession of marijuana. Related crimes are a relevant factor to consider in determining probable cause. *See State v. Gott*, 5th Dist. Stark No. 2003CA00242, 2004-Ohio-3499, ¶ 37 (prior drug history was considered as a factor in finding probable cause for a residential search). When Anderson was removed from the vehicle but prior to the search, Distelrath also smelled burnt marijuana on his person. Finally, although Distelrath stated that he initially did not smell marijuana in the vehicle, he did note the presence of air fresheners

8

hanging from the mirror, another factor that has been considered in evaluating probable cause. *State v. Sherrod*, 11th Dist. Lake No. 2009-L-086, 2010-Ohio-1273, ¶ 21. All of this taken together provided probable cause to conduct a search of the vehicle, as a matter of law.

{¶26} The fact that Distelrath believed the presence of shake alone provided probable cause is irrelevant to the foregoing analysis since the law enforcement officer's subjective belief regarding whether he had probable cause is "irrelevant." *State v. Gill*, 11th Dist. Ashtabula No. 2014-A-0014, 2014-Ohio-4309, ¶ 19-20. Rather, courts evaluate the facts against an objective standard and determine "would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *Terry*, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889, at 21-22; *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

{¶27} Further, while the additional information providing probable cause was uncovered while Anderson was stopped for the traffic offense, it was permissible to detain Anderson for the period of time that occurred here. A traffic stop may last "no longer than is necessary to resolve the issue that led to the original stop" and to issue a traffic citation, however, continued detention is warranted "after the reasonable period of time for issuing the traffic citation" if there is reasonable articulable suspicion of illegal activity. *State v. Ramos*, 155 Ohio App.3d 396, 2003-Ohio-6535, 801 N.E.2d 523, ¶ 10 and 13 (2d Dist.); *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, ¶ 12-14. Here, the duration of the stop prior to the search was less than nine minutes. Distelrath testified that generally when he gives a written warning for a traffic

9

citation, which occurred here, a stop lasts about ten to twelve minutes. As Distelrath explained, and can be seen in the dashcam video, a portion of that time was spent searching Anderson's record, which is permissible in a traffic stop. Given the foregoing, we find no violation of Anderson's rights in relation to the stop or the search.

{¶28} The sole assignment of error is without merit.

{¶29} For the foregoing reasons, the judgment of the Lake County Court of Common Pleas, denying Anderson's Motion to Suppress, is affirmed. Costs to be taxed against appellant.

THOMAS R. WRIGHT, P.J.,

CYNTHIA WESTCOTT RICE, J.,

concur.