[Cite as *State v. Hawkins*, 2023-Ohio-3728.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 29761 |
| | : | |
| v. | : | Trial Court Case No. 2020 CR 03039 |
| | : | |
| STEVEN MICHAEL HAWKINS JR. | : | (Criminal Appeal from Common Pleas Court) |
| | : | |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on October 13, 2023

. . . . . . . . . . .

MICHAEL MILLS, Attorney for Appellant

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Attorney for Appellee

. . . . . . . . . . . .

LEWIS, J.

{¶ 1} Defendant-Appellant Steven Michael Hawkins, Jr. appeals from a judgment of the Montgomery County Common Pleas Court convicting him of one count of aggravated possession of drugs following his no contest plea. Hawkins contends that the trial court erred in overruling his motion to suppress evidence obtained during a traffic

stop of a vehicle in which he was a passenger. For the reasons that follow, we will affirm the judgment of the trial court.


I.    Facts and Course of Proceedings

{¶ 2} On the evening of August 23, 2020, Hawkins was a passenger in a vehicle driven by Philip Whiteted that was traveling on State Route 4 near Eby Road in German Township. Shortly before midnight, German Township Police Officer Wolfe initiated a traffic stop of Whiteted's vehicle due to one of the headlights not being illuminated. A second police cruiser driven by German Township Police Officer Dylan Jones assisted in the traffic stop. Officer Jones' unit was a canine unit. While Officer Wolfe was writing the traffic citation, he requested a canine open-air sniff from Officer Jones.

{¶ 3} When Whiteted and Hawkins were removed from the vehicle to prepare for the canine sniff, Officer Jones noticed Hawkins was very nervous and made furtive movements involving his right hand and the right side of his shirt. Officer Jones asked Hawkins if he had drugs, knives, or guns, and Hawkins responded "No." Officer Jones then asked Hawkins, "You don't mind if I check you real quick?" Hawkins did not respond, so Officer Jones asked him again "You don't mind?" Hawkins responded "No." Officer Jones began a pat-down of Hawkins and removed a wallet from Hawkins' pocket. After searching through the wallet, Officer Jones touched Hawkins' waistband near where Hawkins earlier had tugged on the right side of his shirt. Officer Jones felt an object he immediately recognized as a baggie of drugs. Hawkins pushed Officer Jones' hand away. After further discussion between the two, Officer Jones removed the baggie,

which contained methamphetamine.   Hawkins was arrested.

**{¶ 4}** A Montgomery County grand jury indicted Hawkins on one count of aggravated possession of drugs, a second-degree felony in violation of R.C. 2925.11(A). Hawkins filed a motion to suppress the evidence obtained from the traffic stop.   A hearing on the motion to suppress was held on August 22, 2022.

**{¶ 5}** Officer Jones testified first at the suppression hearing.   Tr. 7-34.   He had been a police officer for eight years and had training as an evidence technician and a canine handler.   On the night of August 23, 2020, he and Officer Wolfe were in separate cruisers stationed by each other on State Route 4 near Eby Road, when they witnessed a vehicle being driven by Philip Whiteted operating with only one working headlight. Officer Wolfe followed Whiteted's vehicle to initiate a traffic stop, and Officer Jones followed Officer Wolfe to assist in the traffic stop.   The State introduced videos of the traffic stop obtained from the body and dashboard cameras.

**{¶ 6}** Whiteted was the driver of the vehicle, and Hawkins was a passenger. Officer Jones noticed that Hawkins was extremely nervous, and it was obvious that his heart was beating very fast.   However, Officer Jones did not notice any suspicious activity from Hawkins while he was in the car.   As Officer Wolfe began writing the traffic citation, he requested that Officer Jones conduct a free-air canine sniff based on some prior field interviews involving Jones and drug activity, which were reflected in a report the officers reviewed in Officer Wolfe's police cruiser.   Officer Jones instructed Whiteted and Hawkins to exit the vehicle.   As Hawkins exited the vehicle from the passenger side, Officer Jones became concerned.   Officer Jones explained:

When I had Mr. Hawkins step out of the vehicle, I noticed that as he was stepping out he was manipulating his shirt on his right side, and he also appeared to adjust something on his right side as he was stepping out. As he walked back away from his vehicle to the front of our cruisers he also tucked his shirt tail down as if he may have been trying to conceal something. I noticed he also had a large black object in his cargo pocket of his shorts.

Tr. 16.

{¶ 7} When Officer Jones asked Hawkins if he possessed any weapons or drugs, Hawkins replied that he did not. Officer Jones then asked Hawkins if he could check him. There was no response. So, Officer Jones asked Hawkins again if he minded if Officer Jones checked him. Hawkins responded no. Officer Jones then proceeded to pat him down. Officer Jones immediately discovered a wallet in Hawkins' pocket. Officer Jones took out the wallet and looked through it. He then continued his pat-down of Hawkins. Officer Jones felt a bulge in Hawkins' waistband. Hawkins then pushed Officer Jones' hand away and told him that he did not want Officer Jones to go through his pockets. Officer Jones, based on his experience and his feel of the bulge, believed the bulge was a baggie of drugs. In response to further questioning, Hawkins told Officer Jones it was a baggie of sand. Officer Jones proceeded to retrieve the baggie, which contained methamphetamine. Officer Jones arrested Hawkins.

{¶ 8} Philip Whiteted testified next at the suppression hearing. Tr. 35-47. He had been driving his grandfather's vehicle at the time of the incident. He believed the

headlights were working properly at the time he was pulled over by the police. However, the police officers would not allow him to check the headlights during the traffic stop. When he arrived at home shortly after the traffic stop, Whiteted took a picture of his headlights, which were illuminated and working. During the traffic stop, Whiteted stated that the headlight might be "shorted" and asked the officers if he could "beat" on the headlight. Whiteted was detained and not free to leave during the traffic stop. Whiteted subsequently paid a fine to resolve the citation he received involving the headlight.

{¶ 9} Hawkins testified last at the suppression hearing. *Id.* at 47-56. He explained that although he had consented to Officer Jones checking him for weapons, he had believed that the search would be limited to looking for weapons, not drugs. At the time Officer Jones removed his wallet, Hawkins knew this was a violation of his rights, but he did not feel comfortable objecting to the removal. He pushed Officer Jones' hand away because he did not consent to Officer Jones searching for anything other than weapons. During the traffic stop, Hawkins did not believe he was free to leave.

{¶ 10} Hawkins filed a post-hearing brief in support of his motion to suppress. On September 12, 2022, the trial court overruled the motion to suppress. After making its findings of fact and summarizing the pertinent caselaw, the trial court concluded:

> This situation is not entirely straight forward. The officer did not immediately engage in a *Terry* frisk. Rather, he went to the wallet and checked it out. Then he proceeded to feel around the waistband. One would think that if he was fearful the Defendant was armed, he would have immediately checked in the waistband area since that is where the weapon

would have been. The testimony appears to indicate he knew the wallet was not the weapon. Therefore, one might conclude that he was looking for evidence, which is not the appropriate goal of a *Terry* frisk. The *Terry* frisk is for officer safety and to find weapons.

Despite the ambiguity of this situation, the court does not conclude there was an improper search. The Defendant had reluctantly consented to a search. In addition, Defendant's nervousness and furtive movement provided grounds for concern about officer safety. The plain feel doctrine applies. The court finds the officer, based on training and experience, immediately recognized the contraband nature of what he was touching. Defendant's *Motion to Suppress* is not well taken and is hereby OVERRULED.

Decision Overruling Motion to Suppress, p. 9.

{¶ 11} Hawkins subsequently pled no contest to one count of aggravated possession of drugs. The trial court found him guilty and sentenced him to an indefinite prison sentence of two to three years. The court also notified Hawkins that he would be supervised by the Parole Board for a period of between 18 months and three years of post-release control. Hawkins filed a timely notice of appeal from the judgment of conviction.

II.     The Trial Court Did Not Err in Overruling the Motion to Suppress

{¶ 12} Hawkins' first assignment of error states:

THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION TO SUPPRESS.

{¶ 13} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *Id.*, citing *State v. Mills*, 62 Ohio St.3d 347, 366, 582 N.E.2d 972 (1992). "Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982). "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist.1997).

{¶ 14} This appeal involves evidence obtained from a search of Hawkins during a traffic stop. The Fourth Amendment to the United States Constitution protects citizens "against unreasonable searches and seizures * * *." "The language of Article I, Section 14 of the Ohio Constitution is virtually identical to the language in the Fourth Amendment," and the Ohio Supreme Court has "interpreted Article I, Section 14 as affording the same protection as the Fourth Amendment." *State v. Hoffman*, 141 Ohio St.3d 428, 2014-Ohio-4795, 25 N.E.3d 993, ¶ 11, citing *State v. Robinette*, 80 Ohio St.3d 234, 238-239, 685 N.E.2d 762 (1997).

{¶ 15} "The Fourth Amendment does not proscribe all state-initiated searches and

seizures; it merely proscribes those which are unreasonable." *Florida v. Jimeno*, 500 U.S. 248, 250, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991), citing *Illinois v. Rodriguez,* 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). Thus, "[t]he touchstone of the Fourth Amendment is reasonableness." *Id.* at 250. "[A] police stop of a motor vehicle and the resulting detention of its occupants has been held to be a seizure under the Fourth Amendment." *State v. Kerr*, 3d Dist. Allen No. 1-17-01, 2017-Ohio-8516, ¶ 13, citing *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). A traffic "stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

{¶ 16} Although Hawkins argued in the trial court that the initial stop of the vehicle was not lawful, he has not made that argument on appeal. Rather, Hawkins contends that the traffic stop was improperly extended to facilitate a canine drug sniff. Appellant's Brief, p. 6. According to Hawkins, "the officer testified that they had completed their computer record checks, the driver had a valid license, found no warrants or other evidence of legal [sic] activity, and decided to extend the stop for the express purpose of imposing a canine sniff. No citation was prepared or issued at that point." *Id.* Since Hawkins does not challenge on appeal the legality of the traffic stop itself, we will assume, as the trial court found, that the officers had a reasonable belief that the vehicle driven by Whiteted had one headlight not working, which was a violation of Ohio law. Instead, we will address Hawkins' argument that the lawful traffic stop became unlawful due to an improper extension of the stop.

{¶ 17} "A seizure that is justified solely by the interest in issuing a * * * ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission."  *Illinois v. Caballes*, 543 U.S. 405, 407, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005).  "Beyond determining whether to issue a traffic ticket, an officer's mission includes 'ordinary inquiries incident to [the traffic] stop.' "  *Rodriguez v. United States*, 575 U.S. 348, 355, 135 S.Ct. 1609, 191 L.Ed.2d 492 (2015), quoting *Caballes* at 408.  "Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance."  *Id*.  A canine sniff is not an ordinary inquiry incident to a traffic stop.  Rather, a canine sniff is more about detecting evidence of criminal wrongdoing than roadway safety.  *State v. Haley*, 3d Dist. Marion No. 9-22-04, 2022-Ohio-2188, ¶ 8.

{¶ 18} However, "the exterior sniff by a trained narcotics dog to detect the odor of drugs is not a search within the meaning of the Fourth Amendment to the Constitution." (Citations omitted.)  *State v. Blatchford*, 2016-Ohio-8456, 79 N.E.3d 97, ¶ 28 (12th Dist.). Consequently, a law enforcement officer may conduct a canine sniff of a vehicle without reasonable suspicion of additional illegal activity, provided that the officer conducts the canine sniff of the vehicle before the reasonable completion of the traffic stop procedures. *State v. Casey*, 12th Dist. Warren No. CA2013-10-090, 2014-Ohio-2586, ¶ 22, citing *State v. Elliott*, 7th Dist. Mahoning No. 11 MA 182, 2012-Ohio-3350, ¶ 23.

{¶ 19} Unlike many cases in which motions to suppress are granted due to the extended delay resulting from the arresting officer waiting for a canine unit to arrive, in

Hawkins' situation, the canine unit was already on the scene at the beginning of the traffic stop. Therefore, the normal delay that results in an extension of a traffic stop when a canine unit is called was not present in this case. Indeed, the video evidence from the traffic stop showed that the stop was initiated at 11:12 p.m. and the search of Hawkins occurred at 11:17 p.m. Officer Wolfe was in the cruiser beginning to draft the citation when Officer Jones felt the contraband. The testimony of Officer Jones and the video evidence showed that very little time passed between the initiation of the traffic stop and when Hawkins was searched. Based on the record before us, we cannot conclude that Hawkins was detained beyond the time to reasonably complete the traffic stop procedures.[1]

{¶ 20} Hawkins next takes issue with the search Officer Jones conducted. Hawkins contends the pat-down search should have ended once the officer confirmed Hawkins' wallet was not a weapon. The State responds that Hawkins voluntarily consented to the search, and the removal of his wallet "did not alleviate Officer Jones' concerns that Hawkins may have a weapon concealed elsewhere on his person." Appellee's Brief, p. 7.

{¶ 21} "Authority to conduct a pat-down search does not flow automatically from a lawful stop; a separate inquiry is required." *State v. Phillips*, 155 Ohio App.3d 149, 2003-Ohio-5742, 799 N.E.3d 653, ¶ 22 (2d Dist.), citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct.

---

[1] The State contends that an open-air canine sniff never occurred, and "[t]he canine was never taken out of the cruiser." Appellee's Brief, p. 4-5. However, the video from the police cruiser's dashboard camera that was introduced at the suppression hearing showed that a canine sniff occurred at 11:24 p.m. This fact, however, does not affect the resolution of this appeal.

1868, 20 L.Ed.2d 889 (1968). The point of that inquiry is whether the officer was "justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others." *Terry* at 24. If that justification exists, the officer may reasonably conduct a pat-down search for weapons. "And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Id.* at 27.

{¶ 22} "The protective pat down under *Terry* is limited in scope to its protective purpose and cannot be employed by the searching officer to search for evidence of crime. * * * Obviously, once the officer determines from his sense of touch that an object is not a weapon, the pat down frisk must stop. The officer, having satisfied himself or herself that the suspect has no weapon, is not justified in employing *Terry* as a pretext for a search for contraband." *State v. Evans*, 67 Ohio St.3d 405, 414, 618 N.E.2d 162 (1993).

{¶ 23} It is "well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." (Citations omitted.) *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). "In order to rely on the consent exception of the warrant requirement, the State must demonstrate that the consent was 'freely and voluntarily given.' " *State v. Starks*, 9th Dist. Summit No. 27347, 2015-Ohio-2137, ¶ 8, quoting *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). "[T]he government bears the burden of showing that consent was 'freely and

voluntarily' given by 'clear and positive' evidence."  *Id.*, quoting *State v. Feeney*, 9th Dist. Summit No. 25727, 2011-Ohio-5474, ¶ 12.

{¶ 24} "Whether a consent to search was voluntary or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all of the facts and circumstances."  *State v. George*, 2d Dist. Montgomery No. 25945, 2014-Ohio-4853, ¶ 28, citing *Ohio v. Robinette*, 519 U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996).   The following six factors are generally considered to determine this question: 1) whether the defendant's custodial status was voluntary; 2) whether coercive police procedures were used; 3) the extent and level of the defendant's cooperation; 4) the defendant's awareness of his or her right to refuse consent; 5) the defendant's education and intelligence; and 6) the defendant's belief that no incriminating evidence would be found.  *Id.*

{¶ 25} The record before us establishes that Officer Jones was justified in believing that Hawkins may have been armed and presently dangerous.   Officer Jones testified that Hawkins had been extremely nervous as he exited the vehicle and immediately began reaching to his one side and pulling down his shirt to cover something on his right side.   Officer Jones also noticed a bulge in Hawkins' pocket around that area.   This testimony was supported by the video evidence of record.   These facts supported a concern that Hawkins was concealing something that may have been a danger to Officer Jones.   Therefore, Officer Jones was warranted in conducting a pat-down of Hawkins. Further, the record supports the trial court's finding that Hawkins voluntarily consented to a search of his person.   Based on his conversation with Officer Jones, Hawkins made it

clear that he was aware of his rights. The trial court found that Hawkins was intelligent and mature. No coercive police procedures were used. Notably, Hawkins concedes in his brief that he voluntarily consented to the search, but instead takes issue with whether the search should have stopped when the wallet was found.

{¶ 26} The trial court's factual findings were supported by competent, credible evidence in the record. These facts established that Officer Jones had authority to conduct a pat-down search and that Hawkins had voluntarily consented to that search. Although we do not approve of Officer Jones' search of the contents of Hawkins' wallet, we conclude that he had the authority to continue his pat-down of Hawkins to ensure that Hawkins was not armed. During this pat-down, Officer Jones felt a bulge in Hawkins' waistband that, based on his experience and his plain feel, alerted him to the presence of drugs. Therefore, Officer Jones had probable cause to believe the item was contraband sufficient to authorize the warrantless search of Hawkins' pocket and seizure of the object within it. *Phillips*, 155 Ohio App.3d 149, 2003-Ohio-5742, 799 N.E.2d 653, at ¶ 41-45, citing *Minnesota v. Dickerson*, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993).

{¶ 27} The trial court did not err in overruling the motion to suppress. The first assignment of error is overruled.

III.    Hawkins Has Not Demonstrated that He Was Denied Effective Assistance of Trial Counsel

{¶ 28} Hawkins' second assignment of error states:

APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND THE SIXTH AND FOURTEENTH AMENDMENTS.

**{¶ 29}** In this assignment of error, Hawkins contends that his trial counsel's failure to expressly raise the issue of improper detention with the trial court constituted ineffective assistance of counsel. According to Hawkins, his trial counsel's failure to raise this issue altered the outcome of his case.

**{¶ 30}** To establish ineffective assistance of counsel, a defendant must demonstrate both that (1) trial counsel's conduct was deficient, and (2) trial counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Trial counsel's performance is deficient if it falls below an objective standard of reasonableness. *Id.* at 687. The first prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Id.* at 689. The second prong requires a showing that the errors were serious enough to create a reasonable probability that, but for the errors, the outcome of the case would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

**{¶ 31}** The failure to raise a particular argument in support of a motion to suppress may constitute ineffective assistance of counsel when the record demonstrates the motion would have been granted had that argument been asserted. *State v. Lewis*, 5th

Dist. Knox No. 20CA13, 2021-Ohio-1360, ¶ 20, citing *State v. Neil*, 10th Dist. Franklin No. 14AP-981, 2016-Ohio-4762. However, counsel is not deficient for failing to raise a meritless issue. *State v. Taylor*, 78 Ohio St.3d 15, 31, 676 N.E.2d 82 (1997).

**{¶ 32}** Hawkins has failed to demonstrate a reasonable probability the motion to suppress would have been granted based on the argument that the traffic stop was improperly extended to conduct a canine sniff. As explained above, the police officers did not extend the traffic stop to conduct a canine open-air sniff. Rather, the canine sniff was ordered and was going to take place within the time confines of the original traffic stop. Therefore, Hawkins' ineffective assistance of counsel claim must fail. *Id.* at ¶ 23. The second assignment of error is overruled.


IV.    Conclusion

**{¶ 33}** Having overruled both of Hawkins' assignments of error, the judgment of the trial court will be affirmed.

. . . . . . . . . . . .


TUCKER, J. and HUFFMAN, J., concur.