**[Cite as *State v. Hill*, 2020-Ohio-3057.]**

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28509 |
| | : | |
| v. | : | Trial Court Case No. 2019-TRD-889 |
| | : | |
| RAYMONE E. HILL | : | (Criminal Appeal from Municipal Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 22nd day of May, 2020.

. . . . . . . . . . .

MATTHEW KORTJOHN, Atty. Reg. No. 0083743, Assistant Prosecuting Attorney, City of Dayton Prosecutor's Office, 335 West Third Street, Suite 372, Dayton, Ohio 45402
     Attorney for Plaintiff-Appellee

RAYMONE E. HILL, 1141 Tennyson Avenue, Dayton, Ohio 45406
     Defendant-Appellant, Pro Se

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} This case is before us on the pro se appeal of Defendant-Appellant, Raymone Hill, from his convictions on charges of operating a vehicle with an obscured license plate and operating a vehicle with expired license plates.

{¶ 2} Hill's assignments of error are not in proper form, but from what we can ascertain, he claims that his conviction for an obscured license plate was based on insufficient evidence.   Concerning his conviction for driving with an expired license, Hill's contention appears to be that his failure to renew his licenses plates was the State's fault, because the State improperly placed a block on his ability to obtain new plates.

{¶ 3} After reviewing the record and applicable law, we find Hill's assignments of error without merit.   Accordingly, the judgment of the trial court will be affirmed.


I.   Facts and Course of Proceedings

{¶ 4} On February 6, 2019, Dayton Police Officer James Luckoski was on patrol at about 9:15 p.m. when he noticed a white 2010 Dodge Challenger traveling through the intersection of Free Pike and North Gettysburg in Dayton, Ohio.   Luckoski and his partner noticed that the vehicle's rear license plate had an obstructed cover and they could not see the plate.   Trial Transcript ("Tr."), p. 6.   The license tag was temporary, and the officers were having a hard time reading it.   *Id.*   According to Luckoski, the officers got to within 10 to 15 feet from the vehicle and were still struggling to read the tag, stating that "It wasn't until we pulled it over and came to a stop that we were actually able to spotlight it and see."   *Id.* at p. 7.

{¶ 5} According to Luckoski, the tag had a "plastic tint cover, like a hard plate covering it," and this is what was making it difficult to read the tag.   *Id.*   Even though

there was overhead street lighting after their cruiser got behind Hill's car on Salem Avenue, the officers were still unable to see the tag. *Id.* at p. 8-9. Luckoski was driving and neither officer could read it. Based on their inability to read the tag, Luckoski initialed a stop. *Id.* at p. 9.

{¶ 6} When the stop was initiated, Luckoski pulled his cruiser close to Hill's vehicle. At that time, Hill's vehicle was less than 10 feet away. When the cruiser came to a stop, Luckoski's partner was unable to enter the number into the computer. *Id.* at p. 8-9. The tint on the cover had a colored surface that darkened any light coming through. *Id.* at p. 10.

{¶ 7} When Officer Luckoski got closer to the vehicle, he noticed that the tag had expired on January 10, 2019. Trial Tr. at p. 11. Once Luckoski finished his initial contact with Hill, he went back to his cruiser and saw that that tag, indeed, had expired on January 10, 2019. *Id.* at p. 12. Hill told Luckoski that "he had a warrant block and that is why he was unable to take care of it at that time." *Id.* Luckoski went on to testify that:

> [Hill] provided me with some paperwork that was dated, I believe, the 22nd of January that was supposed to be him putting [sic] his warrant block, I believe, cleared, but when I asked him why he didn't do anything from the 22nd till the 6th of February, he said he just hadn't been able to.

*Id.* at p. 12. Hill's reasons for not doing anything were "[w]ork and other life issues." *Id.* at p. 13.

{¶ 8} During Luckoski's testimony, Hill told the trial court that "[w]ith the witness's [Luckoski's] testimony, as far as what he observed with the tinted cover or clear plate

cover or expired tags, I'm not disagreeing with [what] the officer observed. I mean, if he observed that, that's what he seen." *Id.* at p. 14.

{¶ 9} Hill also testified at trial and explained that a warrant block had been placed on his registration due to a prior traffic case in which he had not appeared in court. According to Hill, the court in the prior case did not send the information to the correct address, and once that was cleared up, the trial court had removed the block. *Id.* at p. 32-33. The trial court concluded this was irrelevant, and Hill rested shortly thereafter, without putting on further evidence.

{¶ 10} After closing arguments, the court found Hill guilty of both charges, and imposed the following sentence: $50 and court costs for the obstructed plate, and $10 for the expired plate. There is no dispute that these costs and fines have not yet been paid.

{¶ 11} Hill filed an appeal of the judgment, which was docketed as Montgomery App. No. 28346. We dismissed that case, however, for lack of a final appealable order. *See State v. Hill*, 2d Dist. Montgomery 28346 (Decision & Final Judgment Entry, May 21, 2019). After a final appealable order was issued and Hill again appealed, we then transferred the summary of docket entries and the supplement summary of docket entries from that case to the current case, Montgomery App. No. 28509 (Order, Sept. 13, 2019).


II.   Obstructed Plates

{¶ 12} Hill's first assignment of error, as far as we can tell, is that there was insufficient evidence to find him guilty of having an obstructed license plate. Under this assignment of error, Hill makes two points. One relates to reasonable suspicion for the detention (which Hill labels as probable cause), and the other relates to the violation itself.

As to probable cause, Hill contends that once Officer Luckoski stopped him and was able to read the license, no probable cause existed for the stop. In support of this position, Hill relies on *State v. Chatton,* 11 Ohio St.3d 59, 463 N.E.2d 1237 (1984).

{¶ 13} In *Chatton*, a police officer stopped the defendant because he had no rear or front license plates visible on his car. However, when the officer approached the car, he was able to see the defendant's temporary license tag on the deck of the rear window. *Id.* at 59. The officer then questioned the defendant, learned his driver's license was suspended (although the system erroneously listed it as having been suspended), and found a gun in the glove compartment. After pleading no contest to the gun charge, the defendant appealed, contending that the officer lacked probable cause to stop his vehicle once he was able to see the temporary tag. *Id.* at 59-60.

{¶ 14} The Supreme Court of Ohio agreed. First, the court concluded that the officer was justified in stopping the vehicle, because no license plates were visible. The court noted the firmly established principle that "the detention of an individual by a law enforcement officer must, at the very least, be justified by 'specific and articulable facts' indicating that the detention was reasonable." *Id.* at 61, quoting *Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). However, once the officer saw the temporary tag, he no longer had reasonable suspicion to detain the defendant. The court based its decision on the fact that the statute in question, R.C. 4503.182, "does not provide that these temporary license placards, commonly known as 'temporary tags,' must be displayed in any particular fashion." *Id.* at 60.

{¶ 15} However, "[s]ubsequent to *Chatton*, the statute that governs the display of license plates was amended to require operators of vehicles for which a temporary license

tag has been issued to 'display the temporary license placard in plain view from the rear of the vehicle either in the rear window or on an external rear surface of the motor vehicle.' " *State v. Allen*, 2d Dist. Montgomery No. 23738, 2010-Ohio-3336, ¶ 13, quoting R.C. 4503.21. We noted in *Allen* that our court "has twice observed that this amendment supersedes the Ohio Supreme Court's holding in *Chatton*." *Id.* at ¶ 14. Thus, *Chatton* provides no support for Hill's contentions.

{¶ 16} Even if this were otherwise, the case before us differs from the situation in *Chatton*. Specifically, even if Officer Luckoski were able to read the temporary tag once he stopped Hill's vehicle, he still had reasonable suspicion to believe a violation had occurred, because he saw that the temporary tag was expired.

{¶ 17} Hill's second argument is that insufficient evidence existed to support his conviction because Luckoski was able to see the numbers on the temporary tag once he stopped his cruiser behind Hill's car. "In reviewing a claim of insufficient evidence, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, 857 N.E.2d 547, ¶ 43, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 18} R.C. 4503.21(A)(3), which governs this issue, provides in pertinent part, that:

> No person to whom a temporary license placard or windshield sticker has been issued for the use of a motor vehicle under section 4503.182 of the Revised Code, and no operator of that motor vehicle, shall fail to display

the temporary license placard in plain view from the rear of the vehicle either in the rear window or on an external rear surface of the motor vehicle, or fail to display the windshield sticker in plain view on the rear window of the motor vehicle. No temporary license placard or windshield sticker shall be covered by any material that obstructs its visibility.

{¶ 19} In support of his claim that the temporary tag was not obscured, Hill relies on *State v. Brooks,* 11th Dist. Lake No. 2005-L-200, 2007-Ohio-344. In that case, the trial court, in granting suppression of evidence obtained during a traffic stop, found that "the stickers on the license plate were partially obstructed: '[l]ess than one-quarter of the tags were covered by the frame[.]' " *Id.* at ¶ 34. The issue before the court of appeals, on the State's appeal, was "whether R.C. 4503.21 strictly prohibits *any* obstruction." (Emphasis sic.) *Id.* The court of appeals concluded that that statute did not prohibit *any* obstruction, stating that:

Even taking appellant's definition of obstruct, "which is defined as to block, hinder, or cut off from sight[,]" it does not support his proposition that the statute prohibits any obstruction. We interpret that to mean that if the visibility is obstructed, then the numbers would be blocked out of sight; i.e., one would not be able to read them at all. That is not the case here. According to the trial court's findings, seventy-five percent of the tags were visible. As such, we cannot say that the frame obstructed the visibility of the tags.

*Id.* at ¶ 36. The court, therefore, rejected the State's appeal and upheld the trial court's decision to suppress evidence.

{¶ 20} In arguing that sufficient evidence exists to support Hill's conviction, the State relies on our decision in *State v. Phillips*, 2d Dist. Montgomery No. 22918, 2009-Ohio-3519, which distinguished *Brooks*. In *Phillips,* a police officer "began following the [defendant's] vehicle and could not read its temporary license plate despite approaching to within no more than three car lengths. [The officer] noticed a tinted cover over the plate as well as dirt and salt on the cover. He made a traffic stop for an obstructed plate." *Id.* at ¶ 3. However, after stopping the vehicle, the officer approached on foot and was able to read the plate. *Id.* at ¶ 4.

{¶ 21} After the trial court overruled a motion to suppress evidence found in the vehicle, the defendant pled no contest to charges of improperly handling a firearm in a vehicle and improperly displaying a license plate, and then appealed. *Id.* at ¶ 1 and 6. On appeal, the defendant argued that the officer lacked reasonable suspicion to continue the stop because he was able to read the temporary license plate after he stopped the car. *Id.* at ¶ 7. We disagreed, stating that:

Although Phillips' temporary license plate was displayed on the rear of his vehicle, its visibility was obstructed by a tinted cover, dirt, and road salt. Caito [the officer] could not read it when viewed from no more than three car lengths away in his patrol car; therefore, he had reasonable, articulable suspicion that Phillips was violating R.C. 4503.21. This suspicion did not abate simply because Caito then approached Phillips' vehicle on foot and ascertained the plate number. Caito testified that he was able to read the plate only when he reached the "driver's side rear corner of the vehicle." Caito properly concluded that the plate was

obstructed from view, within the meaning of the statute, when he had to approach within a few feet away to read it.

*Phillips* at ¶ 10.

**{¶ 22}** We also distinguished *Brooks*, commenting that:

The majority [in *Brooks*] declined to read the statute strictly as prohibiting any obstruction. It noted the officer's admitted ability to read the characters on the license plate, and it distinguished cases finding a traffic stop permissible where the characters were unreadable. In the present case, of course, the characters on Phillips' temporary plate were unreadable until officer Caito actually walked right up to the rear of the stopped car. Therefore, even if we were to agree with the *Brook*s majority's reading of the statute, its ruling does not conflict with our conclusion here.

*Phillips* at ¶ 14.

**{¶ 23}** The facts in this case are nearly identical to those in *Phillips*. As noted, Officer Luckoski was unable to read the license plate due to the tinted cover, even when he was 10 to 15 feet away, and it was only after he stopped the vehicle that he was able to read the license plate. Accordingly, there was sufficient evidence to support the conviction under R.C. 4305.21(A)(3). The first assignment of error, therefore, is overruled.

### III. Expired License Plates

**{¶ 24}** Hill's second assignment of error pertains to his conviction for driving with expired license plates. There is no dispute that Hill's temporary license tag was expired

at the time he was stopped. According to Hill, the State was at fault for this violation because a registration block was placed based on his failure to appear for a prior traffic citation. Despite his failure to appear, Hill contends that he was not properly notified of the hearing in the prior traffic case because the notice was sent to the wrong address.

{¶ 25} In his brief, Hill asserts various facts pertaining to the registration block, including that after the court in the other traffic case removed the block, he went to the Ohio BMV to register his license plate and was told that the court order had not yet been received. In another visit, on January 22, 2019, Hill presented a certified copy of the court order to a local BMV office, but was told it could not be received at that location and that a block still existed. When the local office offered to fax the court order to the Department of Public Safety for $10, Hill declined. He was then stopped on February 6, 2019, with the expired temporary tag.

{¶ 26} None of the facts about the Ohio BMV were in evidence in the trial court. The law is well-settled that "[a] reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter." *State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500 (1978), paragraph one of the syllabus.

{¶ 27} According to the record, when Officer Luckoski stopped Hill, Hill gave him information about a warrant block that had been resolved on January 22, 2019. When Luckoski asked Hill why he hadn't gotten license plates between then and February 6, 2019, when he was stopped, Hill stated that he was prevented from doing so by "[w]ork and other life issues." Tr. at p. 13.

{¶ 28} As the trial court observed, any excuse Hill offered for failing to obtain

license plates was irrelevant.   As pertinent here, R.C. 4503.11(A) provides that "no person who is the owner or chauffeur of a motor vehicle operated or driven upon the public roads or highways shall fail to file annually the application for registration or to pay the tax therefor."

{¶ 29} "The mental state of the offender is a part of every criminal offense in Ohio except for those plainly imposing strict liability.   R.C. 2901.21(A)(2) requires that, in order to be found guilty of a criminal offense, a person must have 'the requisite degree of culpability for each element as to which a culpable mental state is specified by the section defining the offense.' " *State v. Lozier*, 101 Ohio St.3d 161, 2004-Ohio-732, 803 N.E.2d 770, ¶ 18, quoting R.C. 2901.21(A)(2).

{¶ 30} As to mental states, R.C. 2901.21(B) provides that "[w]hen the language defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in the section, then culpability is not required for a person to be guilty of the offense."   R.C. 2901.21(C)(1) further states that "[w]hen language defining an element of an offense that is related to knowledge or intent or to which mens rea could fairly be applied neither specifies culpability nor plainly indicates a purpose to impose strict liability, the element of the offense is established only if a person acts recklessly."

{¶ 31} R.C. 4503.11 does not specify any degree of culpability.   According to the State, R.C. 4503.11 is a strict liability offense because no moral condemnation attaches for its violation and it is merely a regulatory statute designed to assure that all motor vehicles are registered.   The State further notes that we previously held in *State v. Combs*, 2d Dist. Greene No. 2006-CA-38, 2006-Ohio-7088, that a similar statute,

obscuring a license plate, is a strict liability offense.

{¶ 32} In *Combs*, we considered whether R.C. 4503.21 was a strict liability offense. In evaluating the matter, we noted that "[o]ffenses constituting moral condemnation, or for which imprisonment may be imposed, should not be strict liability offenses." *Id.* at ¶ 17, citing *State v. Brewer*, 96 Ohio App.3d 413, 645 N.E.2d 120 (2d Dist.1994). We then said that:

> Although the issue is not free from difficulty, we agree with the State that the evident purpose underlying R.C. 4503.21 militates in favor of construing it as a strict liability offense. The purpose is evidently to facilitate the tracing of a vehicle back to its owner. This is important if the vehicle is stolen, if it is involved in criminal activity, or if it is involved in a collision, perhaps killing or incapacitating the occupants. In our view, this purpose would be seriously compromised if, in order to prove a violation of the statute, the State would have to prove that the driver was reckless in failing to realize that his license plate was not clearly readable. That the offense is only a minor misdemeanor, carrying a maximum fine of $150, R.C. 2901.02(G)(2), is consistent with this view.

*Combs* at ¶ 18.

{¶ 33} Like R.C. 4503.21, violation of R.C. 4503.11 is a minor misdemeanor and does not involve imprisonment. *See* R.C. 4503.11(D) and R.C. 2901.02(G)(2). Moreover, the purposes of these two sections are similar. Accordingly, the State was not required to prove intent, and Hill's reasons for driving with an expired plate were irrelevant.

{¶ 34} Furthermore, even if the State were required to prove recklessness, it did so. Under R.C. 2901.22(C), "[a] person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." According to the evidence, Hill was well aware that his temporary license tags had expired and drove with expired tags anyway. Regardless of Hill's excuse for doing so, his actions were reckless.

{¶ 35} Based on the preceding discussion, the second assignment of error is overruled.


IV.   Conclusion

{¶ 36} All of Hill's assignments of error having been overruled, the judgment of the trial court is affirmed.


. . . . . . . . . . . .


DONOVAN, J. and HALL, J., concur.


Copies sent to:

Matthew Kortjohn
Raymone E. Hill
Hon. Christopher D. Roberts