[Cite as *State v. Core*, 2023-Ohio-4061.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 29776 |
| | : | |
| v. | : | Trial Court Case No. 2022 CR 01705 |
| | : | |
| MARCUS ANTONIO CORE | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on November 9, 2023

. . . . . . . . . . .

ARVIN S. MILLER, Attorney for Appellant

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Attorney for Appellee

. . . . . . . . . . . .

HUFFMAN, J.

{¶ 1} Marcus Antonio Core appeals from his conviction in the Montgomery County Court of Common Pleas after he pled no contest to one count of having weapons while under disability. Specifically, Core challenges the denial of his motion to suppress evidence. Because we agree with the decision of the trial court denying his motion to suppress, the judgment of the trial court will be affirmed.

**Background and Procedural History**

{¶ 2} While on patrol in the early morning hours of June 19, 2022, Officer Zachary Newsome observed a black Pontiac with no license plate or visible temporary tags. He initiated a traffic stop at Main Street and Fernwood Avenue in Dayton, and as he approached the vehicle on the driver's side, Officer Newsome confirmed that there was no license plate. As he got closer to the driver's door, however, he noticed that there was a temporary tag on the corner of the back window that he had not previously seen; it was difficult to read, though, due to the window tint and because part of the tag was hanging off of the glass.

{¶ 3} As Officer Newsome approached the front of the car, the driver, later identified as Core, opened the door. Officer Newsome introduced himself and began to explain why he had pulled the car over, but the explanation was cut short when Core reached for something in the center console. Officer Newsome told him to "keep your hands up" but, almost immediately, Core reached for the console a second time. Concerned that there could be a weapon in the console, Officer Newsome got Core out of the vehicle and asked him if he had any weapons or contraband in the vehicle. Core answered "no."

{¶ 4} Officer Newsome told Core to exit the vehicle for the safety of others in the vicinity and for his own safety. At this point, Newsome asked Core if he had any weapons on his person; Core did not respond. Newsome then began a pat-down of Core. Within a few seconds, Officer Newsome felt an object by Core's left front pants

pocket that he immediately recognized as a pistol. Officer Newsome then placed Core in handcuffs for officer safety, escorted him to the cruiser, and then removed the gun from Core's pocket. Another officer on scene determined that the weapon was loaded, and a criminal history check established that Core was under disability from a previous felony drug conviction. Further investigation revealed that the gun was stolen.

{¶ 5} On July 13, 2022, Core was indicted on one count of having weapons while under disability, a felony of the third degree, and one count of improper handling of a firearm in a motor vehicle, a fourth-degree felony. After he filed a motion to suppress, which was denied following a hearing, Core agreed to plead no contest to having weapons while under disability; in exchange, the State dismissed the other indicted count. His timely appeal raises one assignment of error.

### Assignment of Error and Analysis

{¶ 6} Core raises the following assignment of error:

THE TRIAL COURT ERRED BY FAILING TO SUPPRESS ALL EVIDENCE RESULTING FROM THE UNCONSTITUTIONAL STOP, DETENTION, AND SEARCH OF MARCUS CORE IN VIOLATION OF HIS FOURTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION AND ARTICLE I SECTION 14 OF THE OHIO CONSTITUTION

### Standard of Review

{¶ 7} An appeal from a ruling on a motion to suppress presents a mixed question

of facts and law. *State v. Ojezua*, 2016-Ohio-2659, 50 N.E.3d 14, ¶ 15 (2d Dist.). When considering a motion to suppress, the trial court has the role of trier of fact and is in the best position to resolve factual questions and assess the credibility of witnesses. *State v. Turner*, 2015-Ohio-4612, 48 N.E.3d 981, ¶ 10 (2d Dist.). As a result, the appellate court must accept the trial court's findings of fact if they were supported by competent and credible evidence. *Id.* "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*, quoting *State v. Koon*, 2d Dist. Montgomery No. 26296, 2015-Ohio-1326, ¶ 13. The trial court's application of law to the findings of fact is subject to a de novo standard of review. *Id.*

### Analysis

{¶ 8} While Core only raises a single assignment of error, he makes several arguments within it, and we will address them in two sections – the stop of his vehicle and the pat-down of his person.

### The Stop

{¶ 9} Core's main argument related to the stop seems to be that Officer Newsome lacked reasonable suspicion to make the initial traffic stop and then, once the temporary tag was discovered on the back window, he was without cause to continue the interaction.

{¶ 10} The Fourth Amendment of the United States Constitution and Article I, Section 14 of the Ohio Constitution protect individuals from unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Pressley*, 2d Dist. Montgomery No. 24852, 2012-Ohio-4083, ¶ 18. A traffic stop by a police

officer must comply with the Fourth Amendment's reasonableness requirement. *Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

{¶ 11} An officer may stop and detain a motorist when he has a reasonable and articulable suspicion that the motorist has committed, is committing, or is about to commit any criminal offense, including a traffic offense, and no independent reasonable and articulable suspicion of other criminal activity is required under *Terry. Pressley* at ¶ 19. A reviewing court determines the existence of reasonable suspicion by evaluating the totality of the circumstances, considering them "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Andrews*, 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991).

{¶ 12} As to the initial stop, Officer Newsome testified that as he was driving behind Core's Pontiac, he could see neither a rear license plate nor a temporary tag affixed to the vehicle. Based on that testimony, we conclude (and Core concedes) that Officer Newsome possessed reasonable suspicion that Core was in violation of R.C. 4503.21, which regulates the display of license plates, registration marks, and stickers. As such, the initial stop of Core's vehicle was reasonable and did not violate his constitutional rights. The next step in the analysis is where the parties' views diverge.

{¶ 13} Officer Newsome then testified that, as he approached Core's vehicle on foot, he was able to determine that while there was no rear license plate, there appeared to be a temporary tag affixed to the rear window. He noted, though, that due to window tint, the tag was not visible until he was "literally up on the vehicle" and that it was partially hanging off the window. Officer Newsome testified that due to the visibility issues, "I don't

believe I could recall seeing all the registration numbers on the plate." Suppression Tr. at 23.

{¶ 14} The fact that the temporary tag was visible *at all* is important to Core's argument. He claims that because there was a tag on the vehicle, he was not in violation of R.C. 4503.21, and Officer Newsome's reasonable suspicion that Core had committed a crime dissipated. As such, he asserts that Officer Newsome should have turned around and discontinued any interaction with Core because he had no authority to further detain Core. An examination of the statute and the caselaw stemming from it is necessary to reach our conclusion.

{¶ 15} R.C. 4503.21(A)(3) states: "No person to whom a temporary motor vehicle license registration has been issued * * * shall fail to display the temporary motor vehicle license registration *in plain view* from the rear of the vehicle either in the rear window or on an external rear surface of the motor vehicle." (Emphasis added). It is Core's contention that because Officer Newsome eventually saw there was a temporary tag on the back window, there necessarily could not have been a violation of the statute. Our caselaw, however, does not support Core's claim that the tag was displayed in compliance with R.C. 4503.21.

{¶ 16} In *State v. Phillips*, 2d Dist. Montgomery No. 22918, 2009-Ohio-3519, an officer pulled over Phillips's car for a violation of R.C. 4503.21 because he could not read the temporary license plate. It was not until the officer approached on foot that he was able to ascertain the plate number. On appeal, we held that the officer's reasonable articulable suspicion that Phillips was violating the statute did not abate when he was

finally able to read the plate number, as it was illegible until he reached the corner of the vehicle. The plate was obstructed from view, within the meaning of the statute, when the officer had to approach to within a few feet to read it. We further held that the officer was not required to abort the stop upon finally reading the plate.

{¶ 17} In *State v. Hill*, 2d Dist. Montgomery No. 28509, 2020-Ohio-3057, Dayton officers noticed a vehicle with a plastic tint cover over its temporary license tag, which made it unreadable even from as close as 10 to 15 feet away. In fact, the officers could not read the numbers on the tag until the vehicle was at a complete stop and they were able to shine a spotlight on it. Despite officers eventually being able to read the plate, we held it was proper for them to continue the stop and that there was sufficient evidence to support a conviction under R.C. 4305.21(A)(3).

{¶ 18} Finally, in *State v. Allen*, 2d Dist. Montgomery No. 23738, 2010-Ohio-3336, officers stopped a vehicle because it had no visible license plate or temporary tag. However, as officers arrived alongside the car they observed a temporary tag lying flat on the rear deck beneath the back window. As with the previously cited cases, this Court held that the stop and its continuation were warranted because "the temporary tag was not in plain view from the rear of the vehicle making the driver of the car in violation of R.C. 4503.21(A) and justifying a traffic stop of the vehicle." *Id.* at ¶ 18.

{¶ 19} In this case, Officer Newsome stated that he could not see a back license plate or a temporary tag when he pulled Core over. As Core admits, this was enough to justify the initial stop. It was not until he got within feet of the vehicle that Officer Newsome saw the temporary tag, and even then, he testified that he could not read it well because

it was, essentially, falling off the window. Based on the facts and our precedent, it is clear that the continuation of the stop was proper because Core's temporary tag, even though it was partially visible upon close inspection (Officer Newsome testified he could not see all the numbers on the plate), was not in plain view.

{¶ 20} Notwithstanding the clear precedent to the contrary, Core urges us to follow *State v. Chatton*, 11 Ohio St.3d 59, 463 N.E.1237 (1984), which stands for the proposition that Officer Newsome was required to discontinue the traffic stop once he saw the temporary tag affixed to the back window. His argument is misguided though, because on several occasions we have observed that *Chatton* has been superseded by amendments to R.C. 4503.21 which now require temporary tags to be displayed in plain view from the rear of the vehicle and to have their visibility unobstructed. *See Phillips,* 2d Dist. Montgomery No. 22918, 2009-Ohio-3519, at ¶ 12; *Allen* at ¶ 13-14; *State v. Brown*, 2d Dist. Clark No. 2817, 1991 WL 285431, *1 (Jan. 9, 1991); *State v. Rose*, 2d Dist. Clark No. 2960, 1993 WL 211565 (June 14, 1993).

{¶ 21} Core's constitutional rights were not violated by the initial or continued stop of his vehicle.

**The Search**

{¶ 22} Core also argues that the trial court erred in denying his suppression motion because his physical interactions with Officer Newsome violated his constitutional rights. He asserts that Officer Newsome had no basis for removing him from his vehicle to do a pat-down and that the search was improper because there was no evidence to demonstrate he was involved in criminal activity. We disagree.

**{¶ 23}** According to *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), an officer may, as a matter of course, order the driver of a lawfully stopped car to exit the vehicle. *See also State v. Evans*, 67 Ohio St.3d 405, 618 N.E.2d 162 (1993). A *Mimms* order is not a stop or a seizure separate and distinct from the original stop and "does not have to be justified by any constitutional quantum of suspicion." *Evans* at 409. A request to exit a vehicle during a traffic stop is not subject to constitutional inquiry because it is a continuation of the original traffic stop. *Id. Accord State v. Harper*, 2022-Ohio-4357, 202 N.E.3d 126, ¶ 28 (4th Dist.) ("[O]nce a driver has been lawfully stopped, an officer may order the driver to get out of the vehicle without any additional justification.").

**{¶ 24}** Officer Newsome's testimony and body camera footage indicated that, as he approached the front of the vehicle and knocked on the driver's window, Core opened the door. A few seconds later as Officer Newsome began to explain why he had made the stop, Core reached with his right hand for something in the center console, prompting Officer Newsome to order Core to keep his hands up. Three seconds after that, the video showed Core reaching toward the center console a second time, prompting Officer Newsome to ask him to step out of the vehicle. Even setting aside Core's immediate furtive movements toward the center console, based purely on *Mimms*, Officer Newsome was justified in removing Core from the vehicle.

**{¶ 25}** Having concluded that Core's rights were not violated when he was asked to step out of his vehicle, we must now determine the propriety of the subsequent pat down. Pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L.Ed.2d 889 (1968), an

officer is entitled to conduct a limited pat-down search of a suspect's outer clothing for weapons if the officer has a reasonable suspicion that "the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others." *Id.* at 24. It would be unreasonable to deny the officer the ability to take necessary measures to determine if the suspect is in fact carrying a weapon and to neutralize the threat of harm. *Id.*

{¶ 26} To justify a pat down search, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21. The officer does not need to be certain that the individual is armed; rather, the issue is "whether a reasonably prudent man in those circumstances would be warranted in the belief that his safety or the safety of others was in danger." *State v. Grefer*, 2d Dist. Montgomery No. 25501, 2014-Ohio-51, ¶ 24. The purpose of the limited search is not to discover evidence of a crime, but rather to allow the officer to investigate without fear of violence. *Evans*, 67 Ohio St.3d at 408, 618 N.E.2d 162.

{¶ 27} At the suppression hearing, Officer Newsome testified that he had had several safety-related reasons to get Core out of the car and pat him down. He first noted the furtive movements toward the center console. He then stated that it was concerning that when Core initially stepped out of the vehicle and was asked if he had any weapons, Core did not respond. Officer Newsome also told the trial court that the location was a heavy "shots fired" area, meaning the police received many reports of shootings coming from that neighborhood. He further mentioned he was concerned that, even in the very

early morning hours, there were pedestrians milling around the area. The video showed at least four people in the area either on the sidewalk next to the cars or on the street. The video also confirmed that Officer Newsome and his partner had to tell some of the bystanders to not interfere and that they would talk with them after the investigation was completed. Specifically, Officer Newsome stated that he did a pat down:

> For the safety of the traffic stop and Mr. Core wasn't responding to my questions at that time. * * * I was concerned that he might have a weapon on him and that, you know, there was people standing next to us on the sidewalk. So for the safety of me and my partner, Mr. Core, the pedestrians, I was making sure there were no weapons involved.

Suppression Tr. at 16-17.

{¶ 28} Based on the hearing testimony and video evidence, it was reasonable for Officer Newsome to believe that Core could potentially be armed and that it was in the interest of his (and everyone's) safety to conduct a pat down to determine if there were weapons.

{¶ 29} Finally, Core argues that Officer Newsome "exceeded the scope of any alleged investigative *Terry* 'Pat Down' search * * * by performing a full manipulative search of his pants and body." Appellant's Brief at 13.

{¶ 30} In *Minnesota v. Dickerson*, 508 U.S. 366, 113 S. Ct. 2130, 124 L.Ed.2d 334 (1993), the United States Supreme Court held that if an officer lawfully pats down a suspect's outer clothing and "feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the subject's privacy beyond that

already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context." *State v. Woods*, 113 Ohio App.3d 240, 243, 680 N.E.2d 729 (2d Dist.1996), citing *Dickerson*.

{¶ 31} "Under the 'plain feel' doctrine, the physical features of the article which are revealed to the officer through his sense of touch must cause the identity of the article, and from that its criminal character, to be immediately apparent to the officer. However, it need only be probable—that is, more likely than not—that the article possesses that criminal character." *State v. Dunson*, 2d Dist. Montgomery No. 22219, 2007-Ohio-6681, ¶ 20.

{¶ 32} Here, Officer Newsome testified that upon the commencement of the initial pat down, he immediately felt an object in Core's left front pocket area that he knew was a pistol, so he placed Core in handcuffs, escorted him to the cruiser, and removed the gun from the front of Core's pants. This account of what happened was not just noted at the suppression hearing, as Officer Newsome can be seen on the body camera video telling both Core and then a fellow officer that he felt the gun and *then* placed Core in handcuffs. There was nothing about the search that infringed upon Core's constitutional rights. Still further, contrary to Core's assertions, there was no evidence that Officer Newsome manipulated the weapon in order to identify it as such, but instead, the testimony was unequivocal that Officer Newsome immediately recognized the object as a pistol upon touching it.

{¶ 33} Having determined that neither the initial seizure nor the subsequent search

of Core were in violation of his constitutional rights, we conclude that the trial court did not err when it overruled Core's suppression motion. As such, his assignment of error is overruled.

## Conclusion

**{¶ 34}** The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, J. and LEWIS, J., concur.