[Cite as *State v. Gaither*, 2024-Ohio-5777.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
BELMONT COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

LEDON ROMERO GAITHER,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 24 BE 0006

---

Criminal Appeal from the
Court of Common Pleas of Belmont County, Ohio
Case No. 23 CR 206

**BEFORE:**
Cheryl L. Waite, Carol Ann Robb, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. J. Kevin Flanagan*, Belmont County Prosecutor, and *Atty. Jacob A. Manning*, Assistant Prosecutor, for Plaintiff-Appellee

*Atty. Aaron M. Meikle*, for Defendant-Appellant

Dated:  December 5, 2024

**WAITE, J.**

**{¶1}** Appellant Ledon Romero Gaither was convicted of possession of and trafficking in cocaine in a jury trial in the Belmont County Court of Common Pleas. The charges arose from a traffic stop, where the drugs were discovered. Appellant filed his motion to suppress the drug evidence, claiming the traffic stop was illegal based on the Fourth Amendment. The trial court denied the motion, and Appellant now appeals the denial of the motion to suppress. The record shows there was no reason to suppress the evidence because the initial stop was lawful. Appellant's assignment of error is overruled and the judgment of the trial court is affirmed.

Unresolved motion

**{¶2}** On November 4, 2024, two days before this case was scheduled to be heard, Appellant filed a pro se motion to disqualify counsel. Although Appellant raises a laundry list of complaints about his appointed counsel, in his motion he alleges that counsel does not have the legal knowledge, skills, thoroughness, or preparation necessary to complete this appeal. The record reveals counsel was appointed by this Court on April 16, 2024, filed a motion to obtain additional transcripts on June 24, 2024, used those additional transcripts to formulate the assignments of error and brief on appeal, and filed a timely brief on July 15, 2024. The brief contains cogent and articulate assignments of error and arguments based on the facts and law applicable to this appeal. Counsel is an experienced appellate attorney in the area of criminal law and has appeared before us many times. As there is no basis for Appellant's pro se motion, it is overruled.

Facts and Procedural History

{¶3}  On August 3, 2023, Appellant was indicted for trafficking in cocaine pursuant to R.C. 2925.03(A)(2), and possession of cocaine in violation of R.C. 2925.11(A), both first degree felonies.  The charges arose from a traffic stop on an entry ramp to I-70 near St. Clairsville in Belmont County.  Detective Dustin Hilderbrand had been watching Appellant prior to the traffic stop, as he believed Appellant may have engaged in drug crimes.  Hilderbrand followed Appellant's car onto the highway entry ramp.  As Appellant speeded up on the ramp, his temporary license tag on the rear of the vehicle was blown upside down and did not return to its original position.  Since the tag was upside down and only the back side of it was showing, it could not be read, giving rise to a traffic stop for failure to properly display a temporary tag, R.C. 4503.21(A)(3).

{¶4}  Another detective arrived on the scene immediately after Det. Hilderbrand stopped the vehicle.  Det. Hilderbrand was also partnered with a drug-sniffing K-9 unit when he made the traffic stop.  Det. Hilderbrand approached the driver's side window and asked Appellant for his identification information.  Appellant had a passenger with him, and Det. Hilderbrand asked for her identification information, as well.  Within two minutes of the time that Det. Hilderbrand stopped Appellant's vehicle, he deployed the K-9 unit to walk around the vehicle.  When the dog alerted that drugs were present, the vehicle was searched, and the officers found marijuana, cocaine, and fentanyl.  The officers then obtained a search warrant to search a hotel room Appellant had been using, and additional illegal drugs were found.

{¶5}  Appellant filed a motion to suppress on September 8, 2023.  A hearing on the motion was held September 26, 2023.  The court denied the motion on November 7,

2023 and the matter proceeded to jury trial on February 27, 2024. The jury found Appellant guilty of the two counts in the indictment. Sentencing took place on March 18, 2024, where Appellant was sentenced to an indefinite sentence of eleven to sixteen-and-one-half years in prison. The sentencing entry was filed on March 19, 2024. This timely appeal followed on April 2, 2024. Appellant raises one assignment of error on appeal.

<u>ASSIGNMENT OF ERROR</u>

THE TRIAL COURT FAILED TO SUPPRESS AND EXCLUDE EVIDENCE THAT RESULTED FROM AN UNREASONABLE TRAFFIC STOP.

{¶6} Appellant challenges the evidence of illegal drug possession and drug trafficking obtained after his traffic stop. Appellant alleges that he was stopped for a minor traffic violation that he did not commit. The record shows that the traffic stop occurred because Appellant's temporary license tag on his vehicle was not properly affixed, and flipped backwards when he entered a highway ramp. Appellant contends this was not a reasonable basis for conducting a traffic stop, and that all the other evidence that was obtained was derived from an illegal stop. Appellant filed a motion to suppress the evidence pursuant to the Fourth Amendment, but the motion was denied. Appellant believes it should have been granted, and all of the evidence used against him should have been suppressed.

{¶7} "The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution secure an individual's right to be free from unreasonable searches and seizures and require warrants to be particular and supported by probable cause." *State v. Telshaw*, 2011-Ohio-3373, ¶ 12 (7th Dist.). A traffic stop is a type of

"seizure" under the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). A traffic stop does not violate the Fourth Amendment if the officer initiating the stop had reasonable suspicion that a traffic offense occurred. *Dayton v. Erickson*, 76 Ohio St.3d 3, 10 (1996). A traffic stop may be reasonable under the Fourth Amendment even if it is for a minor traffic law violation. *Id.* at 11. Additionally, a traffic stop for a minor traffic offense is reasonable under the Fourth Amendment "even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity." *Id.* at the syllabus.

**{¶8}** Review of a trial court's denial of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 2003-Ohio-5372, ¶ 8. In a hearing on a motion to suppress, the trial court sits as the trier of fact and is responsible for determining the credibility of the witnesses and weighing the importance of the evidence. *State v. Fanning*, 1 Ohio St.3d 19, 20 (1982). A reviewing court accepts the trial court's findings of fact if they are supported by competent and credible evidence. *Id.* at 20. Regarding conclusions of law, however, a court of appeals applies a *de novo* standard of review and must determine whether the facts satisfy the applicable legal standards. *Burnside* at ¶ 8.

**{¶9}** "The exclusionary rule is a judicially created remedy applied to exclude evidence from the state's case in chief when it has been obtained by police through an illegal search or seizure in violation of the Fourth Amendment." *State v. Green*, 2005-Ohio-6871, ¶ 13 (12th Dist.); *see also*, *Mapp v. Ohio,* 367 U.S. 643 (1961). The exclusionary rule applies not only to primary evidence directly obtained during an illegal search or seizure, but also to derivative evidence. *Nardone v. United States*, 308 U.S. 338 (1939). This type of evidence is known as the fruit of the poisonous tree. *State v.*

*Carter*, 69 Ohio St.3d 57, 67 (1994). In this case, Appellant argues that all evidence obtained at or after the traffic stop on August 3, 2023 is fruit of the poisonous tree.

{¶10} This appeal revolves around two different interpretations of R.C. 4503.21(3) as it pertains to traffic stops. R.C. 4503.21(A)(3) states:

(3) No person to whom a temporary motor vehicle license registration has been issued for the use of a motor vehicle under section 4503.182 of the Revised Code, and no operator of that motor vehicle, shall fail to display the temporary motor vehicle license registration in plain view from the rear of the vehicle either in the rear window or on an external rear surface of the motor vehicle.

{¶11} There does not appear to be disagreement as to the facts leading up to the traffic stop. Det. Dustin Hilderbrand was following Appellant's vehicle eastbound on U.S. Route 40 and then onto the entry ramp for I-70 at High Ridge Road in St. Clairsville. As Appellant was entering the highway ramp, Det. Hilderbrand was almost directly behind him, approximately one car length away. Det. Hildebrand could see that Appellant's vehicle had a West Virginia temporary tag and he could see that there were numbers on the tag. (9/26/23 Tr., p. 43.) As Appellant made the turn onto the highway ramp and started speeding up, the tag, which was bolted only at the top, flipped up due to the wind and turned upside down. It was still attached to the bolts along one edge, but only the white backside of the paper tag was showing.

{¶12} While still on the entry ramp, Det. Hildebrand pulled Appellant over for a violation of R.C. 4503.21(A)(3), failure to properly display a temporary tag. The reason

for pulling him over was that the tag was no longer in plain view as required by the statute. When Appellant stopped his vehicle, the tag fell back down and the numbers were visible again. Det. Hilderbrand approached the vehicle and asked Appellant and his passenger for their identification. While this was happening, another officer, Det. Grant, arrived. Det. Hilderbrand walked to his cruiser to run the identification information through a national database. While he waited for this information to be checked, he brought out the K-9. Det. Hilderbrand walked the dog around Appellant's vehicle. The dog alerted that drugs were present. This lead to a search of Appellant's car, discovery of drugs, and a request for a search warrant for Appellant's hotel room, where more drugs were discovered.

**{¶13}** Appellant argues that the facts of this case do not show he violated R.C. 4503.21(A)(3), specifically the section that reads: "shall fail to display the temporary motor vehicle license registration in plain view . . . ." Appellant first argues that the statute requires only that the tag itself be visible, not the numbers or other information on the tag. There is no case law to support this conclusion. "It has been explained that the intent of the statute is to 'require that license plates be visible to law enforcement personnel and others who may have reason to note the number for identification purposes.' " *State v. Fredo*, 2012-Ohio-1496, ¶ 25 (7th Dist.), quoting *Lakewood v. Shelton*, 2011-Ohio-4408, ¶ 15 (8th Dist.), quoting *State v. Durfee*, 1998 WL 156857 (11th Dist. March 6, 1998). The purpose of the statute is to display the tag so that the numbers and other information on the tag can be seen.

**{¶14}** Appellant also contends the statute does not mandate the manner for affixing the tag to the rear of the vehicle. The record shows that the tag was bolted to the

back of the vehicle in the location of a regular license plate, but only from the top two bolts.  There is no dispute about these facts.

**{¶15}**  Appellant also argues that the numbers on the tag were visible before and after the traffic stop and that Detective Hilderbrand testified as much.   Detective Hilderbrand testified that he could see the numbers on the tag as Appellant turned onto the entry ramp, but that the tag flipped up as Appellant accelerated, and then only the blank back side of tag was visible.  Hilderbrand stopped the vehicle because the license tag was "no longer in plain view" as Appellant's car moved faster on the entry ramp, even though the blank side of the tag was still visible.  While Appellant was driving faster on the entry ramp, the numbers and other information on the tag were no longer visible.  This is the fact that forms the basis of the traffic stop.

**{¶16}**  Appellant argues that the cases interpreting the "plain view" requirement for temporary tags were all based on the fact that the numbers on the tag were not able to be read at all, rather than being only temporarily unable to be read.  *State v. Kelsey*, 2024-Ohio-806 (6th Dist.) (issue was whether stop was pretextual, not whether tag was in plain view; tag was hidden by tinted windows); *State v. Core*, 2023-Ohio-4061 (2d Dist.) (tag was not visible from the rear and was only partially visible when officer was just a few feet away); *State v. Hill*, 2020-Ohio-3057 (2d Dist.) (tag was covered by material that made it unreadable until vehicle came to a stop).  Appellant claims that the numbers on his tag could be read, and in fact were read, by Det. Hilderbrand prior to the traffic stop and after the stop.

**{¶17}** Appellant relies primarily on a case from the Eleventh District Court of Appeals for the principle that "[t]he intent of the law is to require that license plates be

visible to law enforcement personnel and others who may have reason to note the number for identification purposes." *State v. Anderson*, 2018-Ohio-2455, ¶ 18 (11th Dist.). Appellant argues that other than the few moments when he was speeding up on the entry ramp, the numbers on the tag were visible.

**{¶18}** There is no question that the intent of the statute is to keep the information on the temporary tag visible and readable. "The definition of 'plain view' contemplates actually being able to read the letters and numbers on the license plate." *Wilmington v. Conner*, 144 Ohio App.3d 735, 739 (12th Dist. 2001). The issue here is whether the definition of "plain view" contemplates that the information be continuously visible, or whether it can be intermittently visible, as Appellant argues.

**{¶19}** Appellant contends that if a temporary tag was in plain view at some time while an officer was observing the vehicle, then R.C. 4503.21(A)(3) cannot be violated. This contention, however, is similar to the argument that "I was speeding, but not when you stopped me," or "I did cross the yellow line, but not when you stopped me." As most of the cases involving a "plain view" traffic stop make clear, a violation of R.C. 4503.21(A)(3), in and of itself, justifies a traffic stop, even if no other traffic violation is taking place. The violation, here, is that the tag is not readable at some point, making the information on the tag unavailable at the time the officer is undertaking his or her observation. The question is not whether the tag information is intermittently available, but rather, whether the information is in plain view at all times. Even the *Anderson* holding is consistent with this proposition, because the court held that the information on the license tag must be in plain view for an officer when he or she *may* have need of it, not necessarily that the officer has immediate need of it before, during, or after the traffic stop.

*Anderson* at ¶ 18.  In this case, Det. Hilderbrand sought the information on the tag while Appellant was driving on the entry ramp.  He could not see the tag's information at that time because it disappeared from view, as the tag was not attached properly to the vehicle.  Therefore, when Det. Hilderbrand viewed the back of Appellant's vehicle on the entry ramp, the tag was not in plain view and the statute was violated.

{¶20}  Although Detective Hilderbrand saw the tag before it flipped over, he did not seek the information on the tag at that time.  If the substantive violation in this case had been speeding, the officer would not have needed to record the tag information until Appellant was actually speeding, but it was the speed of the vehicle that caused the tag to be unreadable.  Thus, the infraction did not occur until the tag became unreadable, even though it had been readable earlier.  This is the same, in terms of violation, as if the temporary tag fell off when Appellant was driving, or if Appellant had stopped the car, removed the tag, and kept on driving.  In each scenario, the tag would have been in plain view at one point, but then ceased to remain in plain view.  "A license plate is required by law to be in plain view, exposed to the sight of anyone positioned behind the car." *City of Miamisburg v. Adams*, 1994 WL 527868, *2 (2d Dist. September 30, 1994).

{¶21}  As there is no basis for Appellant's argument that he did not violate R.C. 4503.21(A)(3) and that the traffic stop was unlawful, we move on to a sub-issue briefly raised in this appeal.  Appellant also contends the K-9 sniff search was not warranted.  However, this issue was not preserved for review.  Appellant's counsel stated at the suppression hearing that he was not challenging any issue related to the K-9 sniff search of the vehicle, other than to preserve his claim that as the stop was unjustified, the sniff was also unjustified.  (9/26/23 Tr., p. 14.)  Hence, any questions regarding the K-9 sniff

of the vehicle were expressly waived at the suppression hearing. In Appellant's brief, however, he does raise a question as to whether Det. Hilderbrand unlawfully prolonged the traffic stop in order to deploy a drug sniffing dog. "The critical question is not whether the dog sniff occurs before or after the officer issues a ticket, but whether conducting the sniff adds time to the stop." *Rodriguez v. United States*, 575 U.S. 348, 349 (2015). We have found in similar circumstances the sniff was reasonable when anywhere from 8 to 30 minutes have transpired prior to the arrival of the K-9 unit. *State v. Chapman*, 2019-Ohio-3339, ¶ 40 (7th Dist.). In the instant case, there was absolutely no delay, because the dog was deployed within two minutes of the traffic stop. (9/26/23 Tr., p. 32.) Even if Appellant had properly preserved this issue for review, his traffic stop was not unduly prolonged.

**{¶22}** Appellant's assignment of error is overruled.

### Conclusion

**{¶23}** Appellant contends that he did not violate the statute requiring display of his temporary vehicle tag, because the tag was visible for some time before and after the police stopped his vehicle. Appellant argues that all evidence of illegal drugs found in his car and in his hotel room arose from his traffic stop, and since it was unwarranted the evidence should have been suppressed. R.C. 4503.21(A)(3) requires that a temporary tag be in plain view from the rear of the vehicle. The record reveals that the tag flipped up and was not readable when Appellant entered the highway entry ramp. Since the tag was not in plain view when the officer attempted to observe the tag, the statute was violated. There was a reasonable basis for the traffic stop. Appellant's assignment of error is overruled and the judgment of the trial court is affirmed.

Robb, P.J. concurs.

Dickey, J. concurs.

[Cite as *State v. Gaither*, 2024-Ohio-5777.]

_____

For the reasons stated in the Opinion rendered herein, Appellant's assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Belmont County, Ohio, is affirmed.  Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**